MARY Y. MAGOUN v. FIREMAN'S FUND INSURANCE COMPANY.[1]

June 20, 1902.

Nos. 13,045—(162).

Fire Insurance Policy.

A fire insurance policy insuring the "estate of A. B., deceased," is valid and enforceable.

Insurance of Agent's Property.

Whether an agent can issue the valid policy of one of the companies he represents, insuring his own property, or insuring the property of another person, for whom he is acting as agent in charge of such property, without notice of the facts to the insurance company, quære.

Mortgage Clause.

The policy in issue here, in the standard Minnesota form, contained this provision: "If this policy shall be made payable to a mortgagee of the insured real estate, no act or default of any person other than such mortgagee, or his agents, or those claiming under him, shall affect such mortgagee's right to recover in case of loss on such real estate." It was also stipulated in the policy that the loss, if any, should be payable to a certain named person, mortgagee, as her interest might appear. Held, that this provision gave to the mortgagee independent insurance, which could not be destroyed by the act or default of the mortgagor, or of any person other than the mortgagee or her agents.

Excessive Concurrent Insurance.

H., of the firm of H. & G., defendant's agents, issuing this policy, was part owner of the insured premises as an heir at law of his mother, who had deceased subsequently to the execution of the mortgage, and he was also one of the makers of the note to secure which the mortgage was given. Held, that his failure, when issuing the policy, to notify the defendant insurance company of these facts, and his failure to inform the company that there was a prior policy upon the property, issued to the mortgagee, could not be attributed to her, nor would that fact

1 Reported in 91 N. W. 5.

invalidate the policy issued by H. & G., although the amount was in excess of the amount permitted as concurrent insurance.

## Conveyance in Payment of Mortgage Debt.

*Held,* upon the evidence, that an agreement under which the mortgagee was to receive a conveyance of the premises in full satisfaction of the mortgage debt was not fully consummated prior to the loss, and consequently that there was no change in the legal title to the premises.

## Question for the Jury.

Whether or not, prior to the delivery of defendant's policy, the mortgagee's agent informed Hazen, as one of the agents of the defendant company, that the mortgagee had previously taken out a policy to secure her interest in the mortgaged premises, was in issue at the trial, and was, on the evidence, a question for the jury. *Held,* that the court erred in taking this question from the jury, and directing a verdict for the plaintiff.

Action in the district court for St. Louis county to recover $1,000 and interest upon a fire insurance policy. The case was tried before Ensign, J., who directed a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed, and new trial granted.

*Brown & Kerr* and *Victor Stearns,* for appellant.

*McGiffert & Hunter* and *Baldwin & Baldwin,* for respondent.

COLLINS, J.

This action was brought by the plaintiff, as mortgagee, to recover upon a Minnesota standard fire insurance policy insuring a dwelling house, issued by the defendant company, payable to the "estate of Elizabeth L. Hazen and legal representatives," with loss, if any, payable to the plaintiff, as mortgagee, as her interest might appear. It contained this provision:

"If this policy shall be made payable to a mortgagee of the insured real estate, no act or default of any person other than such mortgagee or his agents or those claiming under him shall affect such mortgagee's right to recover in case of loss on such real estate."

The mortgage held by plaintiff was given to secure an indebtedness of $1,800, evidenced, according to the mortgage, by the note

of Elizabeth L. Hazen, then owner of the property, but who had deceased prior to the issuance of the policy. Her son, Edward Hazen, was also one of the makers of the note. He was also a member of the firm of Hazen & Getchell, agents for the defendant company at Duluth. His brother C. S. Hazen, and himself were sole heirs at law of the deceased, Elizabeth, their mother, and the owners of the insured property, subject to the mortgage and a settlement of the estate in the probate court. The insurable value of the dwelling house was $2,400. After the decease of Elizabeth, an agent of the plaintiff mortgagee requested Edward Hazen to insure the property, and, it is claimed, then and there informed him that plaintiff had previously procured a policy insuring her interest, as mortgagee, to the amount of $1,800, which, it is to be observed, was the full amount of her claim. The loss was total. At the conclusion of the evidence defendant's counsel moved for a directed verdict in favor of their client, which was denied. The plaintiff's counsel then moved the court to direct a verdict in favor of the plaintiff for the full amount claimed in the complaint, which motion was granted, and such verdict returned. Later, upon a settled case, an alternative motion (Laws 1895, c. 320) was made by defendant's counsel, and was denied. This appeal is from the order denying the alternative motion.

A large number of assignments of error are presented, many of which need no consideration. It is claimed by defendant's counsel: First, that the policy was void upon its face, because made payable to the "estate of Elizabeth L. Hazen and legal representatives"; second, that it was void because it was issued by an agent of defendant company, who was in fact part owner of the property insured, and was also one of the makers of the note secured by the mortgage,—the position assumed being that he was thereby incapacitated from acting as defendant's agent in the issuance of a policy,—these facts being known to plaintiff's agent to whom the policy was delivered; third, that it was void because plaintiff had other insurance, which, with that now involved, was in excess of the insurable value; and, fourth, that the policy was avoided because plaintiff had actually purchased the property from the heirs at law in full satisfaction of the note, and thereby had

destroyed the right of subrogation as against Edward Hazen, to which defendant would have been entitled, by the terms of the policy, upon payment of the loss. We take these contentions in their order.

1. It is beyond question that a policy insuring the estate of a deceased person against loss by fire is valid and enforceable. This statement is supported by all of the text-books upon the subject of fire insurance, and is based upon the self-evident proposition that an insurance company should not be permitted to issue a policy, so worded by its own agent, take the premium for, and pretend to insure and protect from loss, and then, when the loss occurs, insist that it is not liable, because, instead of having named the heirs, executors, or administrators of the deceased person as the insured, it simply specified the estate of such person as the insured,—an error, if such it is, which can be easily corrected by a reformation of the contract. Clinton v. Hope, 51 Barb. 647, affirmed in the court of appeals, 45 N. Y. 454; Herkimer v. Rice, 27 N. Y. 163; Weed v. Hamburg-Bremen, 133 N. Y. 394, 31 N. E. 231. To the same effect in fact is Holbrook v. St. Paul F. & M. Ins. Co., 25 Minn. 229. The case cited in opposition—Kenaston v. Lorig, 81 Minn. 454, 84 N. E. 323—is not in point at all, for there the question was as to the passage of the legal title to real estate by a sheriff's certificate of foreclosure, in which the grantee was the "estate of A. B., deceased." In disposing of this point it is not necessary to consider the fact that the policy was also made payable to the "legal representatives" of the Hazen estate.

2. As before stated, Hazen was one of the firm representing defendant company at Duluth, was one of the heirs at law of the deceased owner, and also one of the makers of the secured note. We are not now prepared to assent to the contention of defendant's counsel that his interest in the insured premises was such that he could not bind defendant company by the issuance of its policy, because there would be such a conflict of duty on his part as would require the courts to hold that such a contract is void as against public policy. If this be the law, insurance agents, who habitually insure their own property, and agents who make a practice of insuring property confided to their care in companies

represented by them, have for years been taking great risks themselves, and have also been jeopardizing the interests of others; for it is well known that insurance agents are frequently selected because of desirable risks owned or controlled by them which can be carried by the companies they represent. But we are not compelled to decide the question at this time, for the efficiency of the insurance contract with this plaintiff was not dependent upon the validity of a contract between defendant company and the estate of the deceased or her legal representatives, nor upon the act of defendant's agents.

The plaintiff was not, under the terms of the policy, simply a conditional appointee to receive what, if anything, might become due to the estate, as she would have been had she been wholly dependent upon the "open mortgage clause," so called, formulated in the words, "Loss, if any, * * * payable to Mary Y. Magoun * * * as her interest may appear." Her status was of a more certain and definite nature, because the policy contained, in substance, what is known as the "union mortgage clause" as distinguished from the "open mortgage clause." It has by statute been made a part of the standard policy, inoperative when standing alone, but made valid and enforceable when the clause making the loss, if any, payable to the mortgagee, is attached. It is an independent contract of insurance covering the mortgagee's interest, and giving him the same protection as if he had taken out a separate policy. By it he is freed from conditions imposed upon the owner. It is well settled that a clause of this kind applies exactly in the manner expressed therein. The conditions of insurance relating to such interests are governed and controlled in the manner written upon, attached, or appended to the policy, and not otherwise. A provision of this sort is an independent contract between the defendant company and the mortgagee, and where it is found in the policy the mortgagee's right to recover is not affected or invalidated by the act, neglect or omission or default of the mortgagor or "of any person other than such mortgagee or his agents." His insurance cannot be destroyed by the acts or default of the mortgagor or others. Its clear purpose is to secure and make certain the interests of the mortgagee, and it is to be con-

strued in this light. 13 Am. & Eng. Enc. (2d Ed.) 205, 206; Elliott, Ins. § 341.

A comparison of the union clause as it appears in policies issued in different states with that now before us will show that there is no substantial difference in them, and the authorities are uniform in their construction of such a clause. It must follow that the mortgagee was not responsible for the failure of Hazen to advise the defendant company that he was part owner of the property insured, and was also one of the makers of the note secured by the mortgage. Under this clause his act or default in this respect is not attributable to her. Nor was she liable for his failure to inform the company of the additional insurance, for the delivery of the policy to the mortgagee with notice of this outstanding insurance constitutes consent upon the part of the insurer to the additional insurance. This is a general rule, and is not affected by the fact that Hazen was part owner of the premises, and was also one of the makers of the note, because of the independent contract provided for in the union mortgage clause.

3. It is further claimed that the policy was invalidated before the fire because there was a conveyance of the insured property to the mortgagee in satisfaction of the mortgage note. It is true that a written agreement was made between the plaintiff's agent and Edward Hazen, which, if executed, would have placed the legal title of the property in the mortgagee; but this agreement was not complied with. By its terms Hazen was to provide for the expense of publishing a notice of foreclosure, was to execute and deliver a quitclaim deed conveying the premises, presumably to the mortgagee, and also his promissory note for $100. Plaintiff was to bid in the premises at a foreclosure sale for the full amount due, and thus release Hazen from further liability. The latter never made or attempted to provide for the expense of publication and did nothing about it. Fairly construed, this agreement meant that Hazen was to pay, or secure payment of, the cost and expense of the publication. He simply caused to be executed and delivered to plaintiff's agent a quitclaim deed of the premises. This was never accepted by the agent as a fulfilment or performance of the contract. It conclusively appears that none of the parties con-

sidered that the agreement had been complied with, or that the title had passed. The claim, therefore, that by these acts plaintiff released Edward Hazen from the note, of which he was a signer, and therefore deprived the defendant company of its right to subrogation, is without foundation.

4. As above stated, it was claimed by the plaintiff's agent, and he so testified upon the trial, that when requesting further insurance from Hazen he advised him of the existence of another policy in which the plaintiff's interest was secured to the extent of $1,800. Hazen upon the witness stand denied this, and claimed that he had no notice of existing additional insurance until after the loss occurred. Here was an issue of fact between these parties which should have been submitted to the jury. If a jury should find that Hazen was informed of this additional insurance at the time of the request that another policy issue, or at any time before it was delivered, this amounted to notice to the defendant company, and it would be bound by it; but if, upon the other hand, Hazen had no notice of this additional insurance, which violated a policy provision, until after the fire, the defendant company would not be liable. It was error for the court to take this question from the jury, and for that reason a new trial must be granted.

5. Counsel for plaintiff insist that, in any event, the unauthorized acts of defendant's agents were subsequently ratified by the company with full knowledge of the facts. We find some testimony strongly tending to show a ratification, but it consists in part of answering letters written to Mr. Hazen by defendant's general agent, after the fire, and after the latter had been informed of the additional insurance, and also that Hazen was part owner of the property. The letters from Mr. Hazen to the agent, which induced these answers, are not in evidence, and we are unable to say from the testimony produced that, as a matter of law, the defendant company ratified the acts of its agents.

6. In conclusion we wish it understood that we are not now deciding that plaintiff has the absolute right to recover upon the policy. The contract was that she should recover "as her interest may appear." What her interest actually was might be affected by

full or part payment of concurrent insurance through the other policy.

Order reversed, and a new trial granted.