B X Corporation, Plaintiff, *v.* Aetna Insurance Company, Defendant.

Supreme Court, Special Term, New York County, June 14, 1946.

*Milton B. Ignatius, Edward McFadden, Jr.,* and *Joseph S. Catalano* for defendant.

*Harold D. Klipstein* and *Julius B. Weigert* for plaintiff.

SHIENTAG, J. Two broad questions are raised on this motion to dismiss each of the two causes of action alleged in the complaint: first, the right of the mortgagee to be paid the unearned premiums upon the cancellation of a policy of fire insurance containing the New York standard mortgagee clause; and, second, the right of an insurance company to cancel a fire insurance policy, at the request of the mortgagor, and without the consent of the mortgagee, and to what extent that right of cancellation is affected by the terms of an agreement pursuant to which the payment of the premiums to the insurance company was financed by the mortgagor.

The theory of the first cause of action is that the plaintiff holds the fire insurance policies as collateral security for the mortgage indebtedness, and that it has a " lien " which attaches to the unearned premiums to be returned; this cause of action assumes that the cancellation of the policies was. in fact the valid action of the insurance company itself.

The theory of the second cause of action is that the cancellation of the policies by the insurer, at the request of the mortgagor and without the consent of the mortgagee, constituted a breach of the defendant insurance company's agreement with the plaintiff mortgagee, that the policies would not be invalidated by any act or neglect on the part of the insured mortgagor, and therefore the defendant should respond in damages, in a sum equivalent to the amount of the unearned premiums, for its breach of contract.

The first cause of action alleges in substance that the plaintiff is a mortgagee holding six mortgages secured by certain adjoining real property in New York City and owned by Workers Colony Corporation. Each of the mortgages obligated Workers Colony Corporation as mortgagor to " keep the building on the premises insured against loss from fire for the benefit of " the plaintiff as mortgagee. The defendant is a fire insurance company and on April 13, 1942, had issued policies covering the real property in question against loss by fire. These policies contained the New York standard mortgagee clause and were for a five-year term. According to " Exhibit A ", which is made part of the complaint, the policies had " attached thereto

a rider showing the premiums to have been financed ''. This finance agreement originally entered into between the mortgagor and the insurance broker was assigned, pursuant to its terms, to First Bancredit Corporation, which upon the consummation of the agreement paid the premiums to the defendant insurance company. The policies were delivered to the plaintiff, the mortgagee.

In connection with the loan that it made to pay the premiums upon the policies, Workers Colony Corporation had agreed with the First Bancredit Corporation that '' the insurance companies issuing the policies are hereby authorized and instructed to issue checks solely to you or your assigns for the return premiums '', and the First Bancredit Corporation was authorized to request cancellation of the fire insurance policies in the event that the installments of the loan were not paid when due.

In March, 1945, plaintiff commenced an action to foreclose its mortgages. On April 23, 1945, the First Bancredit Corporation, when installments due on its loan to Workers Colony Corporation remained unpaid, exercised its rights under its agreement and requested the defendant on behalf of Workers Colony Corporation to cancel the policies. On May 17, 1945, the defendant served upon the plaintiff a notice of cancellation of the policies effective ten days thereafter. As a result of such cancellation by the insurance company, return premiums computed on a prorata basis and aggregating $6,579.94 became due and payable. These return premiums, it is alleged, were subject, pursuant to the provisions of the Real Property Law, to a lien in favor of the plaintiff to secure the mortgage indebtedness. Plaintiff demanded payment of this sum which was refused. Instead, the return premiums were paid by the defendant to First Bancredit Corporation after an agreement of indemnity was executed by the latter running in favor of the defendant.

The second cause of action is predicated upon the theory that there was no valid cancellation of the policies by the insurance company. After repeating substantially all of the allegations set forth in the first cause of action, the second cause of action charges '' that prior to April 23, 1945, the defendant insurance company had agreed with the First Bancredit Corporation that it would accept notification of default on the part of the borrower (Workers Colony Corporation) of the payment of the sum due or any instalment thereof, as the request of the assured to cancel the policy; '' that the plaintiff was not a party to this agreement and was without knowledge that it had been entered into; that on or about April 13, 1945, Workers Colony Corpora-

tion defaulted in the payment of an installment in the sum of $5,000 then due to First Bancredit Corporation pursuant to the terms of the premium loan agreement, which default occurred after the plaintiff had commenced an action to foreclose the mortgages; that on or about April 23, 1945, the First Bancredit Corporation notified the defendant of the default by Workers Colony Corporation and requested the defendant to cancel the policies described therein; and that pursuant to said request the polices were cancelled to take effect on or about May 27, 1945.

The second cause of action further alleges that the cancellation of the fire insurance policies by the defendant constituted a breach of its agreement with the plaintiff, as incorporated in the New York standard mortgagee clause, that the insurance represented by each of the fire insurance policies " shall not be invalidated by any act or neglect of the mortgagor "; that because of such cancellation the plaintiff has been damaged in the sum of $6,579.94 (which is the amount of the unearned premiums calculated on a prorata basis).

### (1.) *The first cause of action.*

Doubtless the policies did stand as collateral security. The provisions of subdivision 4 of section 254 of the Real Property Law are applicable. Workers Colony Corporation, by promising to insure the property for the plaintiff mortgagee's benefit, also undertook in the language of that section to " assign and deliver the policy or policies of such insurance to the mortgagee, his executors, administrators, successors or assigns, which policy or policies shall have endorsed thereon the standard New York mortgagee clause in the name of the mortgagee, so and in such manner and form that he and they shall at all time and times, until the full payment of said moneys, have and hold the said policy or policies as a collateral and further security for the payment of said moneys   *   *   *." (The statute had been amended in 1940 [L. 1940, ch. 377] so as to incorporate therein the requirement that there shall be indorsed on the policy the standard New York mortgagee clause in the name of the mortgagee.)

The provision for assignment and delivery of the policies to the mortgagee as further collateral security had, in the absence of the indorsement thereon of the standard mortgagee clause, one purpose: to make certain that in the event of a fire loss the mortgagee would be in a position to present its claim promptly and to hold the insurance proceeds as collateral in

lieu of the property itself. It was not designed to effectuate an absolute assignment carrying with it all of the incidents pertaining to the policy. It had no object other than to protect the mortgagee in the event of loss under the policy. There is no provision in the mortgage agreement or in the statute which specifically pledges unearned premiums. The only specific obligation of Workers Colony under its agreement, and under the provisions of subdivision 4 of section 254 of the Real Property Law, is to have the property insured. That section expounds in detail the rights of the mortgagee in the event of the failure of the mortgagor to keep the property insured. The position of the plaintiff, as of every mortgagee, is carefully stated and neither the mortgage agreement nor the statute breathes the suggestion of the right of the mortgagee to claim unearned premiums as such. In fact, the standard mortgagee clause, by its very terms, negatives the notion that the mortgagee is entitled to the return of any unearned premiums. It provides that the loss, if any, shall be payable to the mortgagee, that the mortgagee is entitled to ten days' notice of cancellation by the insurance company, but makes no mention of any return of premiums to the mortgagee in the event of cancellation.

The 1940 amendment, which incorporated in the policy the New York standard mortgagee clause, injected a new conception into section 254. Where previously the mortgagee held the insurance policies themselves as a further collateral, the result of the amendment was to give the mortgagee a new additional and independent status of holding a separate contract with the insurance company, a contract of insurance which, as will be later pointed out, could not be invalidated by an act or neglect on the part of the insured mortgagor (*Hastings* v. *Westchester Fire Ins. Co.*, 73 N. Y. 141, 147–148; *Eddy* v. *L. A. Corporation*, 143 N. Y. 311). Every policy of fire insurance taken out for the benefit of a mortgagee and containing, as required by statute, the standard mortgagee clause, in effect contains two contracts entered into by the insurer: one with the insured mortgagor and the other with the insured mortgagee. The retention, therefore, of the provision for assignment of the policies as further security may not be considered an enlargement of its original purpose as heretofore indicated, nor does such retention indicate a legislative intent to vest any further rights in the mortgagee.

I conclude therefore, if these policies were validly cancelled by the defendant insurance company, the unearned premiums

calculated on a prorata basis belonged to the mortgagor and not to the mortgagee.

The first cause of action is accordingly dismissed.

### (2.) *The second cause of action.*

The second cause of action is largely based upon the theory that the insurance company breached its agreement with the plaintiff as incorporated in the standard mortgagee clause: that no act or neglect on the part of the mortgagor would invalidate the mortgagee's interest in the fire insurance policies. The defendant, it is charged, had agreed with First Bancredit Corporation, which financed the payment of the premiums on the fire insurance policies for Workers Colony Corporation, that it, the defendant insurance company, would accept notification of default, on the part of Workers Colony Corporation, of the payment of the sum due the finance company, or any installment thereof, as equivalent to the insured mortgagor's request to cancel the policies; that the plaintiff had no knowledge of this alleged agreement between the defendant and First Bancredit Corporation; and that the policies were cancelled by the defendant at the request of the mortgagor acting through its representative, the First Bancredit Corporation.

Concededly, the defendant had the right to cancel the policies and to terminate the interest of the mortgagee thereunder. If it exercised that right its reasons or motives for so doing may not be questioned. Its right to cancel was limited only by the requirement of ten days' notice to the mortgagee (and appropriate notice to the mortgagor as provided in the policy). Whether or not it did so by prearrangement with Workers Colony Corporation and with the First Bancredit Corporation is quite beside the point. Plaintiff mortgagee had no right to require the defendant to keep the insurance in force against its will and the defendant might cancel the insurance for any reason which suited it.

Here the question involved is not the right of the insured mortgagor to compel the cancellation of the policy, but whether or not cancellation by the insurance company, although at the request of a mortgagor, is in violation of the provisions of the standard mortgagee clause. It has been held, for example, that where there is a standard mortgagee clause, as is now required by section 254 of the Real Property Law, the insurance company cannot be compelled to cancel at the instance of the insured mortgagor and without the consent of the mortgagee. If the insurance company refused to cancel, without the consent of

the mortgagee, no premiums would be returnable to anyone (*Lewis* v. *London & Lancashire Fire Ins. Co.*, 78 Misc. 176; *Loew* v. *North British & Mercantile Ins. Co.*, 156 N. Y. S. 692; *Rellim Const. Co.* v. *Automobile Ins. Co.*, 29 N. Y. S. 2d 313). Here, however, the defendant insurance company exercised its right of cancellation which it plainly reserved under the very terms of the standard mortgagee clause. Under its separate contract with the plaintiff mortgagee, the defendant insurance company is privileged to cancel the insurance upon proper notice. The plaintiff mortgagee cannot complain of an exercise of that right whatever the motive may have been for so doing.

The plaintiff contends that when the defendant insurer cancelled at the request of First Bancredit Corporation, acting as agent for the mortgagor, it permitted an act or neglect of the mortgagor to invalidate the insurance as to the interest of the mortgagee; that this was contrary to the standard mortgagee clause, which provides: " * * * this insurance, as to the interest of the mortgagee * * * shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property." What is meant by that provision? To construe it we have to look to its object and its purpose, rather than to a literal dictionary definition. So considered, the provision against invalidation means that no breach of condition, on the part of the insured mortgagor, whether it occurs before or after the issuance of the insurance policies, would be allowed to invalidate the separate contract between the insurer and the mortgagee.

In *Hastings* v. *Westchester Fire Ins. Co.* (73 N. Y. 141, 147–148, *supra*) the court pointed out that " the additional provisions, which were incorporated in the policy by the mortgagee clause, created a distinct contract with the mortgagees. It was an independent agreement partaking in no sense of the character of an assignment of a policy of insurance, but one in which the mortgagees were recognized as a separate party, having distinct rights, and entitled to receive the full amount of the insurance money, without any regard whatever to the owner of the property." In his concurring opinion RAPALLO, J., said at page 153: " I think that the intent of this clause [referring to the equivalent of the standard mortgagee clause] was, that in case by reason of any act of the mortgagors or owners, the company should have a defense against any claim on their part for a loss, the policy should nevertheless protect the interest of the mortgagees, and operate as an independent insurance of that interest, and indemnify them against loss

resulting from fire, without regard to the rights of the mortgagors under the policy; and that, to effectuate that intention, we should hold that, as against the mortgagees, the defendant cannot set up any defense based upon any act or neglect of the mortgagors, whether committed before or after the issuing of the policy, or the making of the agreement between the company and the mortgagees." In *Eddy* v. *L. A. Corporation* (143 N. Y. 311, 324, *supra*) the court said: " By taking the insurance in the manner the mortgagee herein did, instead of taking out a separate policy, all the provisions in the policy, which from their nature would properly apply to the case of an insurance of the mortgagee's interest, would be regarded as forming part of the contract with him, while those provisions which antagonize or impair the force of the particular and specific provisions contained in the clause providing for the insurance of the mortgagee, must be regarded as ineffective and inapplicable to the case of the mortgagee." (See, also, 5 Couch's Cyclopedia of Insurance Law, § 1215b.)

It would seem, therefore, that where there is a standard mortgagee clause in the policy, the insured mortgagor cannot compel the cancellation of the policies without the consent of the mortgagee. The standard mortgagee clause, however, which constitutes a separate contract between the insurance company and the mortgagee, specifically gives the insurance company the right to cancel the policy on ten days' notice to the mortgagee, for any reason whatever. This means that the insurance company may exercise its right to cancel without the consent of the mortgagee even if the mortgagor requests it; nor is there anything in its separate contract with the mortgagee which prevents the insurance company from agreeing that it will cancel, for nonpayment of a premium loan, where the payment of premiums has been financed for the mortgagor by a finance credit company.

This complaint does not proceed upon any theory of fraudulent concealment by the insurance company; it proceeds solely upon the theory of breach of contract. Nor are we concerned on this motion with the question as to whether the plan for financing the payment of premiums is, in any of its features, in conflict with the provisions of the State Insurance Law.

If the mortgagee is to have a right to unearned premiums on a cancellation, by the insurer, of policies of fire insurance containing a standard mortgagee clause, or if cancellation by the insurer, at the request of the insured mortgagor, under circumstances such as are here presented, is to constitute a viola-

tion of the insurance contract, so far as the mortgagee is concerned, those conditions will have to come as the result of agreement between the parties, or appropriate legislation on the subject.

The motion to dismiss the second cause of action is likewise granted. Settle order.