George Starke, J.
This is an action for damages, in the limits of a policy, against Stuyvesant Insurance Company for breach of contract, and Northeast Discount Corporation for inducing the breach.
In July, 1953 plaintiff purchased an automobile for $1,400 from a dealer under a conditional sales contract, which was immediately assigned to the defendant Northeast. Northeast caused the issuance of a fire and theft policy by the American Fidelity Company for a term of 18 months, naming plaintiff and Northeast as coinsureds. In September, 1954 American Fidelity cancelled this policy for resasons not now pertinent, and Northeast replaced this insurance with a policy for $300 issued by the defendant Stuyvesant for a one-year term expir *585 ing September 13, 1955. Plaintiff and Northeast were named' as coinsureds, and the premium of $6 was paid by Northeast. Actually the insurance premium was paid by plaintiff, as all charges for insurance premiums were included in the monthly installments which plaintiff paid to Northeast. Plaintiff made all his payments promptly, and the final payment in January, 1955. Immediately thereafter, and without plaintiff’s knowledge, consent or authorization, Northeast notified Stuyvesant to cancel this policy, in order to pocket a rebate of $3.27. Stuyvesant, disregarding plaintiff’s rights as an insured principal, cancelled the policy and refunded the unearned premium to Northeast. Neither Northeast nor Stuyvesant notified plaintiff of this cancellation, nor even of the intention to cancel.
In February, 1955 plaintiff’s automobile was stolen, and when found by the police department it was stripped of all essential parts, leaving just a bare shell, which plaintiff disposed of as junk for $10.
In their defense, Stuyvesant claims it had the right to cancel the policy upon request of one of the coinsureds without notice to the other; and Northeast claims, since it paid the premiums to Stuyvesant, it had the right to cancel without notifying the plaintiff.
The defense of both defendants is devoid of any merit. Stuyvesant is guilty of gross neglect in breaching the contract. The greed of Northeast to pocket a rebate, to which it had no right, is not only shocking, reprehensible and censurable, but caused harm to plaintiff, for which it must respond in damages.
Under the terms of the policy, in order for Stuyvesant to cancel it must give 10 days’ written notice to the insured. Admittedly, none was given to the plaintiff. With knowledge that it insured two parties with opposite interests, it had no right to accept a cancellation from one insured without consent of or notice to the coinsured. While the conditional sales agreement was in effect, plaintiff and Northeast had conflicting insurable interests. (Interstate Ice & Power Corp. v. United States Fire Ins. Co., 243 N. Y. 95.) A debtor-creditor relationship existed between them. Both held duplicate-original policies issued by Stuyvesant. While the policy may not have stated the nature of the insurable interest of each, in the absence of inquiry, the insured is not required to disclose the nature or extent of his interest. (Cross v. National Fire Ins. Co., 132 N. Y. 133, 136.) When the conditional sales contract was paid up, title to the automobile vested in plaintiff. Upon the extinguishment of the debt under the conditional sales contract, *586 Northeast no longer had any insurable interest. Plaintiff became the sole ‘ ‘ insured ’ ’ under the policy. From then on, Northeast certainly had no right or power to act as plaintiff’s agent to effect a cancellation without express authority for that purpose. Stuyvesant was fully aware of these facts, for the numerous business transactions between Northeast and Stuyvesant were more than sufficient to put Stuyvesant on notice as to the rights of the parties concerned.
Northeast is liable to the plaintiff for the unjustified interference with the contract of insurance between plaintiff and Stuyvesant. Since Lumley v. Gye (2 El. & Bl. 216; 118 Eng. Rep. 749), a rule of law has evolved that where one maliciously interferes with a contract between two parties and induces one of them to breach the contract to the injury of the other, an actionable wrong is committed. (Lamb v. Cheney & Son, 227 N. Y. 418; Campbell v. Gates, 236 N. Y. 457.) Actual malice is not a prerequisite for a recovery. As the Court of Appeals held in Campbell v. Gates (supra, p. 460): “ The action is predicated not on the intent to injure, but on the intentional interference, without justification, with A’s contractual rights, with knowledge thereof.” This principle is restated in Hornstein v. Podwits (254 N. Y. 443, 448) thus: “ One who, having knowledge of an existing valid contract between others, intentionally, knowingly and without reasonable justification or excuse, induces one of the parties to the contract to breach it to the damage of the other party, is liable in an action to recover the damages suffered.”
The fact that plaintiff has a good cause of action against one for breach of contract does not prevent him from suing others who induced the breach, though the damages be the same and can be collected in an action on the contract. (Hornstein v. Podwits, supra.)
The plaintiff’s failure to submit proof of loss within 60 days from the loss, as required by the policy, does not release Stuyvesant from liability when Stuyvesant disclaimed liability prior to the expiration of that period. In so doing, Stuyvesant waived the requirement that proof of loss be submitted within the stipulated time. Hence, Stuyvesant cannot deny liability on the ground that proof of loss was not timely submitted. In Miles. v. Casualty Co. of America (115 N. Y. S. 1, 2, affd. 136 App. Div. 908) the court admonished: “ Both law and. reason combine in allowing plaintiff to establish his right by action immediately &nd without waiting for the useless formality of serving these proofs which the company by its action had waived and substantially told him it would be useless so to do.” *587 (To like effect see Lloyd v. Worth British & Mercantile Ins. Co., 174 App. Div. 371; Orwat v. Ætna Ins. Go., 131 Misc. 141, and Neal, Clark & Neal Co. v. Liverpool & London & Globe Ins. Co., 178 App. Div. 730.)
Northeast brashly if not brazenly admits that the cancellation of this policy was but one of thousands it cancelled for the sole purpose of reaping the rebate. This wholesale practice of canceling without notifying the insured and pocketing the rebates evidences conduct deserving the severest criticism. Such callousness evinces an utter disregard of the rights of all insureds. In fact, this unconscionable action and procedure is so outrageously irresponsible and repugnant as to justify the imposition of punitive damages, had it been sought. (Cf. Bankers Trust Co. v. Island Discount Corp., 6 Misc 2d 948.)
Since the limit of the policy is $300, and plaintiff salvaged $10, judgment is rendered for plaintiff against both defendants for $290, with interest as demanded.