MUTUAL CREAMERY INSURANCE
COMPANY, a corporation, Plaintiff,

v.

IOWA NATIONAL MUTUAL INSUR-
ANCE COMPANY, a corporation,
Defendant.

No. 4–67 Civil 15.

United States District Court
D. Minnesota,
Fourth Division.

Jan. 6, 1969.

338

Craig H. Anderson, Minneapolis, Minn., for plaintiff.

John Lommen, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION
MILES W. LORD, Judge.

### FINDINGS OF FACT:

This diversity case arises out of a dispute between two insurance companies, Mutual Creamery Insurance Company, a domiciliary of Minnesota, and Iowa National Mutual Insurance Company, a domiciliary of Iowa. On May 6, 1965, a windstorm loss occurred to certain business premises owned jointly by Jamison Bros., Inc. and Spring Lake Park Investment Co. (S.L.P.) with a mortgage outstanding in favor of Minneapolis Federal Savings and Loan Association (Minneapolis Federal). A policy had been written by Mutual which covered the premises, and under this policy Mutual paid the loss in full. Mutual admits its liability; it is Mutual's contention here that an Iowa National policy also covered the loss, and that Mutual is thereby entitled to contribution from Iowa National.

Iowa National had issued a Minnesota Standard Fire Insurance policy for a period of five years, effective from April 6, 1963 through April 6, 1968. On March 28, 1965, Duane Jamison, the officer of Jamison Bros. and S.L.P. responsible for insurance coverage, presented a claim to Iowa National following a boiler malfunction on the premises which caused damage. Upon being informed by an adjustor from Iowa Na-

tional that this loss was not covered under the policy, Jamison called his Iowa National agent, Jack Hollister. In this conversation, Jamison stated that if the boiler loss was not covered, he would not renew his policy with Iowa National.

Shortly after his conversation with Hollister and on or about April 1, 1965, Jamison contacted V. S. Peterson. Peterson was an agent for Mutual and other companies and it was Jamison's intent to replace all of his Iowa National policies with other insurance obtained through Peterson. In particular, Jamison relied solely upon Peterson to obtain new insurance to cover the business premises and to cancel the Iowa National policy. Peterson did obtain a binder of coverage upon the premises from Mutual effective April 6, 1965, which coincided with the "anniversary date" of the Iowa National policy at which time the premium for the following year became due. The Mutual policy insured against the same hazards for the same amount as the Iowa National policy except for certain additional features, among them coverage for boiler malfunction. Peterson was able to tell Jamison that he was "fully covered" under Mutual, with the exact premium to be charged contingent upon inspection of the boiler.

Upon proof of loss submitted by Jamison after the May 6 windstorm, Mutual paid $25,341.89 for the damage sustained by the premises. Of this amount, it is not disputed that $23,443.17 would have been payable under the Iowa National policy if it were in effect at the date of the loss. Mutual, therefore, seeks contribution in the amount of $11,721.58.

Hollister testified that he did not interpret his conversation with Jamison to mean that Jamison would discontinue coverage on the premises with Iowa National before the policy expiration date on April 6, 1968. However, after receiving a letter from Peterson dated April 5, 1965, Hollister considered the Iowa National policy cancelled effective April 6, 1965. The letter reads in part:

Enclosed are two (2) policies as written for the above captioned insureds.

Effective at 12:01 AM on April 6, 1965 those policies have been replaced by this agency. The mortgage company has been instructed to return your original fire policy to you.

Possibly the only genuine factual dispute at trial involved the question as to what were the "two policies" inclosed with the letter. Hollister testified that he was 100 per cent sure that a memorandum[1] of the Iowa National policy covering the premises was one of the "two policies" enclosed. Peterson, though his recollection was uncertain, felt that this memorandum was not enclosed, and that the "two policies" referred to were actually an Owners, Landlords & Tenants policy and a separate endorsement form. He could not specify the exact type of endorsement form which had been enclosed, or the particular Iowa National policy to which it attached. Peterson did admit that he intended by this letter to give notice of replacement of the Iowa National policy covering the business premises, and the Court considers it more likely than not, upon all the evidence, that the memorandum was enclosed.

The insured never tendered payment of the premium on the Iowa National policy due April 6, 1965. The Iowa National agent never billed the insured for this premium because he had received Peterson's letter. Iowa National did debit the account of its agent for the amount of this premium and as a matter of insurance practice would continue to do so until Iowa National received the original policy from the agent for cancellation. Because of this practice, Hollister attempted to obtain the original which was held by the mortgagee, Minneapolis Federal.

Mr. Paul O'Malley, who was at the time of the loss manager of the insurance department for Minneapolis Federal, testified that the mortgage agreement required the mortgagor to keep the premises insured for the benefit of the mortgagee. Pursuant to this agreement Minneapolis Federal was named a loss payable mortgagee on the face of both the original Iowa National policy and the memorandum, and was entitled by the mortgage agreement to hold the original. Hollister was apprised of the interest of Minneapolis Federal by examining the memorandum enclosed with Peterson's letter, and contacted them once or twice before May 6 in an attempt to obtain the original. He was refused because of the business practice of Minneapolis Federal not to release an original until it received a new policy in replacement. Further, Minneapolis Federal was unaware of the fact that the Mutual policy had been issued. Hollister had not been given the name of the new company by Peterson, and could not supply this information. Peterson, despite the language of his letter, testified that he never contacted Minneapolis Federal at any time before the loss. In fact, he alleged that he was never aware of the interest held by Minneapolis Federal before the loss, and thought instead that S.L.P. might have held a mortgage interest in the premises. Peterson explained that he deposited the original of the Mutual policy with S.L.P., which policy did not mention any interest of any mortgagee at the time of the loss. Hollister was finally able to obtain the original of the Iowa National policy on June 30, 1965, at or about which time Minneapolis Federal received the original of the policy issued by Mutual. There is no evidence, however, that Iowa National or its agent gave written notice of cancellation of the Iowa National policy to Minneapolis Federal, or made any demand for payment of the premium which was due April 6.

Although Minneapolis Federal was not mentioned on its policy, Mutual included Minneapolis Federal as a payee in the draft executed in payment of the claim. Mutual did not become aware of the interest held by Minneapolis Federal until June 7, 1965, when it received an in-

---

1. The memorandum is a copy of the original of an insurance policy. Although it cannot be used for purposes of cancellation, it contains the essential policy terms.

vestigation report from its adjustor. Mutual then concluded that Minneapolis Federal had a "legal interest" in the proceeds, and named Minneapolis Federal in the draft in order to "protect itself." The Mutual policy was subsequently amended to include Minneapolis Federal as a loss payable mortgagee. O'Malley testified that the interest of Minneapolis Federal was satisfied by payment from Mutual. He further stated that as the draft came in his employees "would have held the funds and perhaps they probably disbursed them in this case, making sure that lien waivers were had for all of the necessary work that had to be done." Jamison testified that he fully intended to protect the interest of Minneapolis Federal in any policy obtained to replace his coverage under Iowa National, and he did not contest payment of the proceeds from the Mutual insurance to Minneapolis Federal.

At no time prior to the instant suit have either Jamison Bros. and S.L.P. or Minneapolis Federal presented a claim arising out of the May 6, 1965 loss to Iowa National. On July 13, 1967, Minneapolis Federal executed an assignment to Mutual of any interest it might have had in the Iowa National policy at the time of the loss. Iowa National has at no time acknowledged liability for the loss.

## CONCLUSIONS OF LAW

### I. CANCELLATION

Iowa National contends that its policy was cancelled both as to the insured, Jamison Bros. and S.L.P., and as to the mortgagee Minneapolis Federal. Iowa National urges that the procurement of the Mutual policy by the insured acted, under the doctrine of cancellation by substitution and replacement, so as to cancel the interests of the insured and the mortgagee in the Iowa National insurance. Iowa National further argues that the letter sent by the agent of the insured was a clear and unequivocal request for cancellation which effectively cancelled the policy as to the insured and mortgagee. The Court, then, must de-termine whether at the time of the loss, Iowa National's policy was cancelled either as to the insured, or the mortgagee, or both.

*Cancellation by substitution and replacement.*

In argument before the Court ,defendant has relied heavily upon the doctrine of cancellation by substitution and replacement. For reasons to be expressed, the Court feels constrained not to follow that doctrine.

The doctrine states in essence that when the insured procures a second policy which covers the same risk as a present policy with an intent to cancel the present policy, this act *ipso facto* will effectively cancel the present policy. See generally Annot., 3 A.L.R.3d 1072 (1965). It is urged by defendant that the Iowa National coverage was cancelled at 12:01 A.M. on April 6, 1965, the time at which the Mutual policy binder was given effect.

No Minnesota cases have been cited by counsel which would govern the Court's disposition of the substitution question. Failure, however, of the court in Merchants & Farmers Mut. Cas. Co. v. St. Paul-Mercury Indemnity Co., 214 Minn. 544, 8 N.W.2d 827 (1943), aff'd on rehearing, 218 Minn. 396, 16 N.W.2d 463 (1944), to mention the substitution doctrine on a factual situation similar to the present case would suggest that the doctrine is not followed in Minnesota.

Recent case law is decidedly against the doctrine of cancellation by substitution. Annot., 3 A.L.R.3d 1072, 1074 (1965). In Glens Falls Ins. Co. v. Founders' Ins. Co., 209 Cal.App.2d 157, 25 Cal. Rptr. 753, 3 A.L.R.3d 1058 (1962) the insured had told the agent for Glens Falls that she would cancel her Glens Falls policy if the company did not honor a claim she had presented. The claim was not honored, and because of this the insured proceeded to obtain coverage with Founders. Even though the insured testified that she wanted only one policy, the court refused to consider the Glens Falls insurance cancelled by the

mere fact of her conversation with the Glens Falls agent, and procurement of new insurance. *Glens Falls* has been followed by a majority of recent decisions.[2]

There is an additional reason to question the applicability of the substitution doctrine in the present case. The substituted Mutual policy was, at the date of the loss, in the form of a binder with the exact terms of the final policy contingent upon boiler inspection. The Ninth Circuit held: "[W]e are unwilling to include within the principle of substitution a temporary binder where there is no showing that the new company for the projected term had unqualifiedly 'bought' the risk * * *." *Northwestern Mutual Ins. Co. v. Michaelson, supra*, 322 F.2d at 306.

*Cancellation of the interest of the mortgagor-insured in the Iowa National policy.*

█ The interest of the mortgagor in the Iowa National policy was effectively cancelled by reason of a clear and unequivocal request for cancellation manifested by its agent. The pertinent provision of the policy with regard to cancellation reads:

> This policy shall be cancelled at any time at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time.

█ Contrary to plaintiff's contention it was not necessary that the Iowa National agent Hollister obtain possession of the original of its policy for that policy to be cancelled at the request of the insured. "Rescission of an insurance contract may be accomplished by mutual agreement without an actual surrender of the policy. Whether a rescission has been accomplished depends upon the intent of the parties as evidenced by their acts." *Merchants & Farmers Mut. Cas. Co. v. St. Paul-Mercury Indemnity Co., supra*, 8 N.W.2d at 828. Dunnell's Minnesota Digest, § 4659a, p. 76. See, e. g., *Fidelity & Cas. Co. of N. Y. v. Indiana Lumbermen's Mut. Ins. Co.*, 382 F.2d 839 (5th Cir. 1967); *Eicher-Woodland Co. v. Buffalo Ins. Co. of N. Y.*, 198 La. 38, 3 So.2d 268 (1941). "The testimony of the office employee to the effect that they had to pick up the policies in order to cancel them must, in view of these facts, be interpreted as office procedure rather than any requirement of the company * * *." *De La Perriere v. Am. Home Assurance Ins. Co.*, 106 Ga.App. 516, 127 S.E.2d 478, 480 (1962).

█ The burden of proof rests upon Iowa National to prove that its policy has been cancelled. *Merchants & Farmers Mut. Cas. Co. v. St. Paul-Mercury Indemnity Co., supra; Dupeck v. Union Ins. Co. of Am., supra.* This burden has been met with regard to the insured. The evidence is sufficient to show that the insured, acting through agent Peterson,[3] requested cancellation of the Iowa National policy. See *Cormican v. Anchor Cas. Co.*, 249 Minn. 196, 81 N.W.2d 782 (1957). It is necessary that the request be clear and unequivocal, *Baysdon v. Nationwide Mut. Fire Ins. Co., su-*

2. *See National Investors Fire & Cas. Ins. Co. v. Pacific Indemnity Co.*, 359 F.2d 203 (10th Cir. 1966); *Northern Ins. Co. of N. Y. v. Mabry*, 4 Ariz.App. 217, 419 P.2d 347 (Ct.App.1966); *Bumb v. Am. Home Assur. Co.*, 246 F.Supp. 509 (S.D.Calif.1965); *MFA Mut. Ins. Co. v. Southwest Baptist College*, 381 S.W.2d 797 (Mo.1964); *Northwestern Mut. Ins. Co. v. Michaelson*, 322 F.2d 304 (9th Cir. 1963); *Baysdon v. Nationwide Mut. Fire Ins. Co.*, 259 N.C. 181, 130 S.E.2d 311 (1963); *see also General Ins. Co. of Am. v. Lapidus*, 325 F.2d 287 (9th Cir. 1963); *Dupeck v.*

*Union Ins. Co. of Am.*, 329 F.2d 548 (8th Cir. 1964); *Mann v. Charter Oak Fire Ins. Co.*, 196 F.Supp. 604 (E.D.Ark. 1961), aff'd, 304 F.2d 166 (8th Cir. 1962); *but see Virginia Mut. Ins. Co. v. Ins. Co. of North Am.*, 383 F.2d 6 (4th Cir. 1967).

3. The record clearly indicates that Peterson had authority to act on behalf of Jamison to obtain new insurance and do whatever was necessary to cancel the Iowa National policy. Peterson's authority has not been placed in issue by plaintiff.

pra; Bumb v. Am. Home Assur. Co., supra; and the Court has found that Peterson's letter of April 5, 1965 which was addressed to the agent for Iowa National was a request to cancel the Iowa National insurance in question at a definite and certain time: 12:01 A.M. on April 6, 1965. This was not an expression of intent to cancel upon the failure of occurrence of a stated event, e. g., Merchants & Farmers Mut. Cas. Co. v. St. Paul-Mercury Indemnity Co., supra [cancellation by the insured found contingent upon the refund by the insurer of excess premium payments]; Cormican v. Anchor Cas. Co., supra [cancellation by the insurer found contingent upon failure of the insured to pay premium due], nor was this an expression of intent to cancel the policy at some indefinite time in the future. Compare Lievers v. Nat. Ins. Underwriters, 257 Minn. 268, 101 N.W.2d 817 (1960) with Glens Falls Ins. Co. v. Founders' Ins. Co., supra. It is further apparent that the Iowa National agent considered the policy cancelled. He failed to send the notice for the premium due April 6, 1965 and requested surrender of the original of the policy from the mortgagee. See Id. Finally, it should be noted that the insured considered the Iowa National policy replaced and was assured by Peterson that the premises were fully covered by Mutual.

*Cancellation of the interest of the mortgagee in the Iowa National policy.*

■ While defendant has sustained its burden of proving that its policy was cancelled as to the interest of the insured which had mortgaged the premises, the Court is of the opinion that the policy was never effectively cancelled as to the interest of the mortgagee Minneapolis Federal. The interest of Minneapolis Federal is evident from the face of the original policy and the memorandum

which read: "subject to the provisions of the policy the loss is payable to Minneapolis Savings & Loan Association mortgagee, as its interest may appear." The relevant provisions state:

If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation.

Notwithstanding any other provisions of this policy, if this policy shall be made payable to a mortgagee of the covered real estate, no act or default of any person other than such mortgagee or his agent or those claiming under him, whether the same occurs before or during the term of this policy, shall render this policy void as to such mortgagee nor affect such mortgagee's right to recover in case of loss on such real estate * * *.

The Minnesota court in Magoun v. Fireman's Fund Ins. Co., 86 Minn. 486, 91 N.W. 5 (1902) concluded that such a clause was a

"union mortgage clause" as distinguished from the "open mortgage clause." It has by statute been made a part of the standard policy, [currently M.S.A. 65A.01 Subd. 3, Laws 1967, ch. 395] inoperative when standing alone, but made valid and enforceable when the clause making the loss, if any, payable to the mortgagee, is attached. * * * A provision of this sort is an independent contract between the defendant company and the mortgagee, and where it is found in the policy the mortgagee's right to recover is not affected by the act, neglect, or omission or default of the mortgagor * * *. 91 N.W. at 7.[4]

4. *See* Bankers' Joint Stock Land Bank of Milwaukee, Wis. v. St. Paul Fire & Marine Ins. Co., 158 Minn. 363, 197 N.W. 749 (1924); Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937); Capital Fire Ins. Co. of California v. Langhorne, 146 F.2d 237 (8th Cir. 1945); Syndicate Ins. Co. v. Bohn, 65 F. 165 (8th Cir. 1894); Fruehauf Trailer Co. v. Stuyvesant Ins. Co., 141 F.Supp. 65 (D.Minn.1956); *see generally* Couch on Insurance 2d § 42:682 et seq.; Annot., 124 A.L.R. 1034 (1940).

The testimony in this case indicates that Minneapolis Federal was unaware that a policy written by Mutual insured the premises. Neither Jamison or his agent Peterson [5] contacted Minneapolis Federal prior to the loss. Although Hollister contacted Minneapolis Federal prior to the loss, he did not know the name of the company which was to have replaced Iowa National. Mutual, for its part, was not made aware of the fact that Minneapolis Federal held a mortgage on the premises until after the loss.

It is important in this case that Hollister was unable to obtain the original of the Iowa National policy from Minneapolis Federal until roughly two months after the time of the loss. Hollister was told that Minneapolis Federal would continue to hold the policy to protect its interest as a mortgagee until it received the original of a new policy in replacement. When Hollister eventually did succeed in obtaining the original, Minneapolis Federal had received the Mutual policy in replacement and the loss had been paid in full by Mutual.

The issue which this Court must resolve is whether or not the unilateral act of cancellation by a mortgagor without the consent of a mortgagee named in a standard mortgage clause can cancel the interest of that mortgagee. In Employers' Fire Ins. Co. v. Pennsylvania Millers Mut. Ins. Co., 116 Ga.App. 433, 157 S.E.2d 807 (1967) a mortgagor requested cancellation of a policy issued by Pennsylvania without obtaining the consent of the mortgagee. It had not been proven that any agent or officer of the mortgage company had received written notice of cancellation, though there was some indication that the mortgagee had been told that the policy was cancelled. The court held:

the unilateral act of [the mortgagor] in requesting a cancellation of the policy without [the mortgagee's] consent and without written notice as provided for by various other policy provisions could not effect cancellation of the Pennsylvania Millers' policy as to the mortgagee. 157 S.E.2d at 811.

In Agnello v. South Carolina Ins. Co., 15 Misc.2d 589, 181 N.Y.S.2d 224 (Sup.Ct. 1959), modified, 10 A.D.2d 893, 199 N.Y.S.2d 929 (1960) an insurance agent intended to replace the South Carolina fire policy with a second policy issued by a different company. The agent had been given authority by the mortgagor to obtain coverage with such companies as he wished, and the combined coverage of both policies exceeded the insurable value of the property. Because the original of the South Carolina policy remained in the possession of the mortgagee, and the mortgagee had not been notified of its replacement by the agent, the court concluded that the South Carolina policy remained in effect as to the mortgagee. 199 N.Y.S.2d at 930.[6]

In the present case, Iowa National has failed to offer any proof that it gave ten days written notice of cancellation to Minneapolis Federal as it was required to do under the very terms of its policy. Absent this written notice, or any indication of consent by Minneapolis Federal to cancellation, the policy remained in effect to protect its interest as mortgagee. Kennedy to Use of Bogash v. Aetna Ins. Co., 87 F.2d 683 (3d Cir. 1937), modified, 301 U.S. 389, 57 S.Ct. 809; Tarleton v. De Veuve, 113 F.2d 290, 132 A.L.R. 343 (9th Cir. 1940), cert. denied, 312 U.S. 691, 61 S.Ct 710, 85 L.Ed. 1127 (1941).[7] In addition to its failure to

5. Peterson explained that he was unaware of the interest of Minneapolis Federal in the premises. Jamison could not recall mentioning that interest in his discussions with Peterson, however, that interest is clearly revealed on the face of the Iowa National memorandum.

6. "The express requirement of notice of cancellation does not except cases in

which new insurance has been taken out." Amalgamated Cas. Ins. Co. v. Winslow, 77 U.S.App.D.C. 382, 135 F.2d 663, 664–665 (1943).

7. *See* Schellhorn Bros. Real Estate Agency v. Nat. Liberty Ins. Co. of Am., 11 N.J.Misc. 849, 168 A. 278 (1933); National Investors Fire & Cas. Ins. Co. v. Pac. Indemnity Co., supra; Gilman v.

offer any evidence of notice of cancellation, Iowa National has failed to offer any proof that demand for payment of the premium due April 6, 1965 was tentered to Minneapolis Federal. Absent a demand for payment, the mortgagee's interest cannot be considered cancelled for nonpayment of the premium. General Ins. Co. of Am. v. Allen, 40 F.2d 384 (9th Cir. 1940); Tarleton v. De Veuve, supra; cf. Travelers Ins. Co. v. Springfield Fire & Marine Ins. Co., 89 F.2d 757 (8th Cir. 1937).

## II. CONTRIBUTION

■ The conclusion is reached that both Iowa National and Mutual had policies in effect which insured the same property against essentially the same risks at the time of the May 6, 1965 loss. This had led the Court to consider Mutual's argument that it is thereby entitled to contribution. This claim is based on the following provision contained in both policies:

> This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved.[8]

On the basis of this provision, it is the Court's opinion that because Mutual paid the entire loss it may properly recover from Iowa National a pro-rata share of the amount which would have been payable under both policies, stipulated by the parties to be one-half of $23,443.17.

■ The general rule, followed in Minnesota, is that "[i]nsurance is not concurrent unless the policies are 'on the same property or same part thereof, on the same interest in the property, against the same risks, and in favor of the same party.'" Nobbe v. Equity Fire Ins. Co., 210 Minn. 93, 297 N.W. 349, 350 (1941). See Bankers' Joint Stock Land Bank v. St. Paul Fire & Marine Ins. Co., supra; 45 C.J.S. Insurance § 922; Couch on Insurance 2d Section 62:-166, p. 572. At the time of the loss the Iowa National insurance remained effective only to protect the interest of Minneapolis Federal. Because Mutual's policy named the mortgagor as insured but failed to mention Minneapolis Federal, it is argued by defendant that contribution is improper as the policies protect different "interests" and "parties."

The case frequently cited in support of this contention is Eddy v. London Assurance Corp., 143 N.Y. 311, 38 N.E. 307, 25 L.R.A. 686 (1894). There, a New York court denied contribution between the separate insurers of a mortgagee and mortgagor because the additional policy procured by the mortgagor could in no way have benefited the mortgagee. 38 N.E. at 310. The situation in which a separation of interest between mortgagor and mortgagee is found generally arises when one obtains separate or additional insurance coverage without the consent or knowledge of the other, and with no intention of protecting the interest of the other. In this situation, contribution is properly denied.[9] It is said, however, that

Commonwealth Ins. Co. of N. Y., 112 Me. 528, 92 A. 721, L.R.A.1915C, 758 (1914); cf. Eicher-Woodland Co. v. Buffalo Ins. Co. of N. Y., supra; see also National Factors, Inc. v. Waters, 42 Misc.2d 822, 249 N.Y.S.2d 121 (Sup.Ct. 1964); Boon v. Arkansas Farmers Mut. Fire Ins. Co., 224 Ark. 618, 275 S.W.2d 436 (1955); B X Corp. v. Aetna Ins. Co., 187 Misc. 806, 63 N.Y.S.2d 14 (Sup. Ct.1946), aff'd, 272 App.Div. 880, 72 N.Y.S.2d 405 (1947); Canales v. Stuyvesant Ins. Co., 10 Misc.2d 583, 172 N.Y.S.2d 729 (Mun.Ct.1958); Syndicate Ins. Co. v. Bohn, supra; Schoenherr v.

Continental Ins. Co., 282 App.Div. 817, 122 N.Y.S.2d 458 (1953); but cf. Fidelity & Cas. Co. of N. Y. v. Indiana Lumbermen's Mut. Ins. Co., supra.

8. The conditions and provisions under which the standard fire policy may be issued in Minnesota are prescribed by statute, currently M.S.A. 65A.01, Laws 1967, ch. 395.

9. See Nobbe v. Equity Fire Ins. Co., supra; Peerless Ins. Co. v. Bailey Mortgage Co., 345 F.2d 14 (5th Cir. 1965); St. Paul Fire & Marine Ins. Co. v. Crutchfield, 162 Tex. 586, 350 S.W.2d

[i]f * * * the owner obtains insurance payable to the mortgagee as his interest may appear pursuant to an obligation imposed by the mortgage, the insurer on a separate policy of the mortgagee may prorate, the fact that the mortgagee has no knowledge of the other policy being immaterial in such a case. 45 C.J.S. Insurance § 922c(3), p. 1034.

If, in fact, both the Iowa National and Mutual policies protected the interest of Minneapolis Federal as mortgagee, then contribution is proper.[10]

Minneapolis Federal, though unnamed in the Mutual policy at the time of the loss, did receive the proceeds from Mutual's draft in payment of the loss. Paul O'Malley, the officer in charge of the insurance department of Minneapolis Federal at the time of the loss, testified that as a result of this payment the interest of Minneapolis Federal had been fully satisfied. The vice president of Mutual testified that Minneapolis Federal was paid "as a matter of protection once the knowledge became available to us," because Mutual felt that Minneapolis Federal held a legal right to the policy proceeds.

The mere voluntary payment to Minneapolis Federal by Mutual would be insufficient to establish its legal right to the policy proceeds. The rule is that

> if the mortgagor convenants to keep the mortgaged property insured for the better security of the mortgagee, the latter will have an equitable lien

upon the proceeds of insurance carried by the mortgagor, in case of loss, to the extent of his interest in the property destroyed, even though the policy contains no mortgagee clause and is payable to the mortgagor. Couch on Insurance 2d Section 29:82, p. 366.

The mortgagee's equitable lien is recognized in Minnesota. See Mark v. Liverpool & London & Globe Ins. Co., 159 Minn. 315, 198 N.W. 1003, 38 A.L.R. 310 (1924); Ames v. Western Mfg's Mut. Ins. Co., 29 Minn. 330, 13 N.W. 137 (1882); see generally Annot., 92 A.L.R. 559 (1934).

In the present case there is uncontradicted testimony by O'Malley that the mortgage agreement required the mortgagor to keep the premises insured for the benefit of Minneapolis Federal. Had Mutual paid only the named insured with knowledge of this mortgage agreement, Mutual could still have been liable to Minneapolis Federal to the extent of the latter's interest. E. g., Factoring & Discount #2 v. Central Mut. Ins. Co., 125 F.Supp. 627 (S.D.N.Y.1954), aff'd, 216 F.2d 751 (2d Cir.). See 5 Appleman, Insurance Law & Practice Section 3381; Couch on Insurance 2d Section 29:88; Annot., 21 A.L.R. 1464 (1922). The Court concludes that Minneapolis Federal not only did receive, but was legally entitled to and should have received any proceeds in payment of the loss under the Mutual policy. E. g., Ames v. Western Mfg's Mut. Ins. Co., supra.

The Eighth Circuit, in an analogous factual situation, granted contribution.

534 (1961); Murdaugh v. Traders & Mechanics Ins. Co., 218 S.C. 299, 62 S.E. 2d 723 (1950); Johnson v. Fidelity & Guaranty Ins. Co., 245 S.C. 205, 140 S.E.2d 153 (1965); Laurenzi v. Atlas Ins. Co., 131 Tenn. 644, 176 S.W. 1022 (1915); Loftis v. Stuyvesant Ins. Co., 54 Tenn.App. 371, 390 S.W.2d 722 (1965); see Couch on Insurance 2d Section 62:169; 45 C.J.S. Insurance Section 922c(3).

10. See Dixey v. Federal Compress & Warehouse Co., 140 F.2d 820 (8th Cir. 1944); Goodman v. Quaker City Fire & Marine Ins. Co., 254 F.2d 844 (1st Cir. 1958); Lipsitz v. Union Ins. Soc., Ltd. of London, Eng., 149 Misc. 809, 268 N.Y.S. 179 (1933); Employers' Fire Ins. Co. v. British Am. Assur. Co., 259 N.C. 485, 131 S.E.2d 36 (1963); Employers' Fire Ins. Co. v. Pennsylvania Millers Mut. Ins. Co., supra; Boon v. Arkansas Farmers Mut. Fire Ins. Co., supra; compare Vance Trucking Co. v. Canal Ins. Co., 395 F.2d 391 (4th Cir. 1968) with Great West Cas. Co. v. Truck Ins. Exchange, 358 F.2d 883 (10th Cir. 1966); but cf. Laurens Fed. Savings & Loan Ass'n v. Home Ins. Co. of N. Y., 242 S.C. 226, 130 S.E.2d 558 (1963); Amalgamated Cas. Ins. Co. v. Winslow, supra.

Dixey v. Federal Compress & Warehouse Co., supra. The opinion stated:

> [Both policies] in specific terms, insured against damage by fire to the specific property to the amount of the value. Although the Pennsylvania promised to pay to the plaintiffs and the Pacific promised to pay to the warehouse company, the warehouse company was required by the regulation to pass the money promptly on to the plaintiffs so that the plaintiffs' interest was the sole and real interest insured. In that situation apportionment of the insurance payable was appropriate and necessary. 140 F.2d at 822.

For the same reason, contribution should be available to Mutual as the insured under its policy was required to pass any proceeds to its mortgagee, and in effect, both insurers protected the same interest and party at the time of the loss.

The Court has carefully considered the cases advanced by defendant in opposition to contribution, and finds them inapposite. The dictum in Bankers Joint Stock Land Bank v. St. Paul Fire & Marine Ins. Co., supra, 197 N.W. at 750, does not involve the factual situation where the mortgagee has a right to the proceeds of a separate policy taken out by the mortgagor. In Nobbe v. Equity Fire Ins. Co., supra, the interest of the mortgagee arose from a second policy which it had taken out solely for its benefit and in which it was the named insured. The Minnesota court thus denied contribution with the policy of the mortgagor which included a loss payable clause protecting the mortgagee. In the present case, the mortgagee is protected in both policies as a result of a standard mortgage clause agreement; when two policies operate so as to protect the identical interest of the same party, contribution is necessary and proper.

■ Defendant has advanced the contention that the acts of Minneapolis Federal in accepting payment under the Mutual policy, and failing to press any claim against Iowa National, constitute a waiver of any rights against Iowa National. Even if this were true, the acts of Minneapolis Federal after the loss are not relevant to the question of contribution. Contribution is intended to protect the insurer, and the Court's inquiry is limited to a determination of which parties and interests were in fact protected by the respective policies at the time of the loss—not at some time subsequent to the loss. Defendant does not contend that Mutual has waived its right to receive contribution.

It is ordered that judgment be entered for plaintiff in accordance with the foregoing.