## JAMES H. ARNOLD v. W. E. DAUCHY and Others.[1]

June 16, 1911.

Nos. 17,017—(137).

**Excavation of bank — inspection by master — questions for jury.**

    The plaintiff lost his arm by the alleged negligence of the defendants while he was engaged, as one of a steam shovel crew, in excavating a bank consisting of sand, gravel, and forty per cent. of rocks, some of them weighing a ton or more each. Verdict directed for defendants. Evidence considered, and *held*, that it was sufficient to take the case to the jury upon the questions: Were the natural conditions of the bank and the dangers incident to its excavation such that the defendants, in the exercise of ordinary care for the safety of their employees, ought to have provided for the inspection of the bank after each stop of the shovel, and before it was moved forward and again put in operation? If such was their duty, then were they guilty of negligence in the discharge of it, which resulted proximately in plaintiff's injury?

[1]Reported in 131 N. W. 625.

Action in the district court for Hennepin county against W. E. Dauchy, W. F. Carey and Winston Brothers Company, to recover $25,000 for personal injuries. The answer alleged among other matters that plaintiff received the injury of which he complained while working as shovel pitman; that he was experienced in that class of work and fully appreciated the dangers incident thereto, and that his injuries were due to his own negligence. The reply was a general denial. The case was tried before Hale, J., who directed a verdict in favor of the defendants. From an order denying plaintiff's motion for a new trial, he appealed. Reversed and new trial granted.

*Samuel A. Anderson* and *Albert H. Hall,* for appellant.

*Cobb & Wheelwright* and *John I. Dille,* for respondents.

START, C. J.

The plaintiff, ·an employee of the defendants as one of a steam shovel crew, was injured by a bank caving in while he was aiding in the removal of sand, gravel, and rock from the bank with the steam shovel. He brought this action in the district court of the county of Hennepin to recover damages on account of his injury.

The here material allegations of the complaint are to the effect that: On January 7, 1909, the defendants were, and for some time previous thereto had been, operating a steam shovel near Lothrop, Montana, for the purpose of removing from the bank of a hill, dirt, rock, and other substances and placing them upon cars alongside of the shovel. The bank was in a dangerous condition on account of overhanging large rocks and débris, that were liable to fall when the plaintiff and others were working near the bank. This condition was at all times known to the defendants, and it was their custom, before permitting the plaintiff or other members of the crew working around the shovel to go close to or alongside the bank, to cause the overhanging rocks and débris to be thrown down, so as to render safe the place where the plaintiff was required to work. The defendants assigned this duty to their general foreman on the work, who customarily inspected the bank in the discharge of the duty; but at the time the plaintiff was injured the defendants negligently and contrary to the custom failed to remove the overhanging rocks and débris, and

negligently ordered the plaintiff to work beside the bank without warning him of its dangerous condition, and negligently failed to furnish him a reasonably safe place in which to work.   The plaintiff had no means of knowing that the overhanging rocks and débris had not been removed when he complied with defendants' order.   While so engaged in the discharge of his duties, the top of the bank suddenly caved in, precipitating rocks upon him, which so crushed his right arm that it was necessary to amputate it.

The allegations of the complaint as to the negligence of the defendants were put in issue by the answer.   The cause was tried to a jury, and at the close of all the evidence the jury were directed to return a verdict for the defendants.   The plaintiff appealed from an order denying his motion for a new trial.

If there was any evidence fairly tending to establish the acts of negligence alleged in the complaint, or one or more of them, the verdict was erroneously directed; otherwise not.   A decision of the question depends largely upon the personal duties of the defendants, in view of the facts which there was evidence tending to establish. There was evidence tending to show the following evidentiary facts:

The defendants had a contract with a railway company to grade a part of its roadbed and do certain riprapping in connection therewith.   The material for the work was in a hill half a mile from the railway line.   A track was laid along the side of the hill, upon which cars were run to take away the sand, gravel, and rocks, which were excavated and loaded on the cars by a steam shovel, which was moved forward on temporary tracks, which were extended as the work progressed.   Each forward movement was for a distance of about six feet.   The last move, before the accident occurred, brought the shovel and the car to which it was attached to a point where the bank was some eighteen feet high, forty per cent. of which were rocks, some of them weighing a ton or more each.   The defendant Carey had general charge of the work, and was on it every day.   He was not on duty during the night.   His place at night was taken by the walking foreman, Donaldson.   "So far as anything away from the shovel was concerned," Donaldson's general duties were to see that the temporary tracks were laid at the proper time, that the cars were properly taken

to and from the shovel, and help the several crews when requested. The operation of the shovel was in charge of the steam shovel engineer and foreman, Cox, whose duties, in addition to operating the shovel, were to give the pitmen orders, to look after the bank "to see that it was safe for the men to work under," and if he discovered that it was unsafe he would tell Donaldson to take it down. Cox and Donaldson worked together on the "proposition of the safety of the bank," the character and condition of which were such as to require watchfulness and inspection on their part to see that it was safe before moving the shovel forward.

The plaintiff was a member of the pit crew, and had been a month before the accident, and for two weeks next before he worked on the night shift serving as a jackman, whose duty in connection with another member of the crew, Bowman, was to keep the jack arms or braces adjusted on each side of the car to which the shovel was attached, so as to keep it steady. It was also his duty to assist in leveling off the dirt and débris in front of the shovel, preparatory to extending the tracks and moving the shovel forward; but it was no part of his duty to inspect the bank before the shovel was moved forward. Such duty, so far as the plaintiff observed during the two weeks he was with the night crew, was discharged by Mr. Donaldson, the walking foreman, who was accustomed to cause the overhanging part of the bank, if any there were, to be pried off or broken down before the shovel was moved forward. The crew on the night of the accident stopped at midnight for supper, and returned to the work at one o'clock. One of the jackmen, Bowman, called Donaldson's attention to the condition of the bank, and suggested to him that it was unsafe, and that he was afraid that it would cave in. Donaldson replied that he saw no danger; but he did not then, nor before the accident, examine the bank. Work was resumed at one o'clock, and the plaintiff took his usual place as jackman on the right-hand side of the shovel and between it and the bank. The night was dark and stormy, and he could not see what the condition of the bank was, nor did he know that it was other than in a reasonably safe condition. At about two o'clock a. m., while the plaintiff was so at work, he heard the rocks rattle, looked up, and saw that the bank was caving. He

then tried to escape, but could not, and he was struck by rocks from the bank. One of them, weighing one or more tons, struck him and crushed his arm. Whenever the tracks were extended and the shovel moved forward, the character of the bank was constantly changing while the shovel was in operation.

There was also evidence tending to show other facts more favorable to the defendants. But, in making this statement of the evidentiary facts, we have taken, as must be done where the question is whether a verdict was properly directed for the defendant as a matter of law, the most favorable view of the evidence permissible for the plaintiff. We must also, in determining whether the evidence of such evidentiary facts is sufficient to take the case to the jury, accept all inferences in favor of the plaintiff that may be fairly drawn from the evidentiary facts.

The contention here made by the defendants is, in brief, that the undisputed evidence brings this case within the general rule that, where a place is rendered unsafe by the necessary progress of the very work in which the employee is engaged, he assumes for himself the risks incident to such service, including the negligence of his fellow servants, and that there is no personal duty resting on the master as to the safety of the place under such circumstances. The "gravel pit cases" in this court are apt illustrations of this rule and its application. See Reiter v. Winona & St. Peter R. Co. 72 Minn. 225, 75 N. W. 219. If such be the effect, as a matter of law, of the undisputed evidence in this case, it cannot be distinguished on principle from the "gravel pit cases," and the directed verdict was right. It may also be conceded that, if the bank had been properly inspected and the overhanging portions thereof broken down before the shovel was moved forward and put in operation, and that solely by reason of the operation of the shovel after it was moved forward the bank became unsafe the defendants would not be liable.

We have attentively considered the evidence, and reached the conclusion that it did not present simply a question of law for the trial judge. On the contrary, we are of the opinion that the evidence was sufficient to take the case to the jury upon the following pivotal questions: Were the natural conditions of the bank and the dangers

incident to the work of excavating it such that the defendants, in the exercise of ordinary care to prevent the exposure of their employees to unnecessary and unreasonable risks, ought to have provided for the inspection and making safe of the bank, so far as such result could have been secured by the exercise of ordinary care, after each stop of the shovel and before it was again moved forward and put in operation? If it was their duty so to do, then were they guilty of negligence in the discharge of the duty, which resulted proximately in the injury of the plaintiff?

The evidence is not conclusive as to either question, and fair-minded men might reasonably draw different conclusions therefrom. The evidence presents a fairly debatable question whether the bank in question was an ordinary gravel bank, or one which by reason of its peculiar condition involved extraordinary dangers in its excavation. If it was the latter, then it was the personal duty of the defendants to use ordinary care to prevent the exposure of their employees to unnecessary dangers in making the excavation. Cook v. St. Paul, M. & M. Ry. Co. 34 Minn. 45, 24 N. W. 311; Bennett v. Syndicate Ins. Co. 39 Minn. 254, 39 N. W. 488; Carlson v. N. W. Tel. Exch. Co. 63 Minn. 428, 65 N. W. 914.

While a danger resulting from a change in the condition of the bank while the shovel was in actual operation would be a necessary one, yet if it was reasonably practicable to inspect the bank and make it safe before moving the shovel forward and putting it in operation, any danger resulting from a failure so to do would be an unnecessary danger. Whether the plaintiff's injury was caused proximately by a failure to inspect and make safe the work before the shovel was moved forward and put in operation was also made by the evidence a question of fact for the jury.

Order reversed, and new trial granted.