## GEORGE F. THOMPSON v. WATSON P. DAVIDSON.[1]

### May 4, 1917.

### Nos. 20,171—(48).

**Broker — action for commission — construction of agreement.**

The plaintiff and the defendant entered into a contract whereby the plaintiff was constituted the agent of the defendant to solicit purchasers for his lands. The contract provided that for sales in excess of certain quantities or in the event of trades a special agreement as to the commission should be made; but that in the event that no special agreement was made the commission should be a fixed sum per acre. In an action to recover the commission upon such a sale it is *held* that the evidence conclusively shows that a special agreement was made fixing the plain-

[1]Reported in 162 N. W. 458.

tiff's commission at a gross sum, the same not to be paid until the purchaser paid his first note; and, no part of it having been paid, the plaintiff was not entitled to recover.

Action in the district court for Ramsey county to recover a balance of $13,300 due for services in obtaining a purchaser for defendant's land. The case was tried before Brill, J., who at the close of the testimony denied motions for instructed verdicts, and a jury which returned a verdict for $14,232.99. Defendant's motion for judgment notwithstanding the verdict was granted. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*Charles G. Laybourn,* for appellant.

*B. H. Schriber* and *E. T. Young,* for respondent.

DIBELL, C.

Action by the plaintiff to recover commissions upon the sale of land. There was a verdict for the plaintiff. The court granted defendant's motion for judgment notwithstanding the verdict. From the judgment entered the plaintiff appeals.

On January 29, 1912, the plaintiff Thompson and the defendant Davidson entered into a written contract whereby Thompson agreed to solicit purchasers for Davidson's lands. The provisions relative to commissions, so far as it is necessary to refer to them, were as follows:

"In consideration of the agreements hereinafter contained, the party of the second part agrees to solicit prospective purchasers for lands owned by the party of the first part, and the party of the first part agrees to pay to said second party for any services rendered by him hereunder a commission of two and no/100 dollars (2.00) per acre on any lands actually sold in tracts of 640 acres or less, and that on sales of larger tracts or in the event of trades being made, a special agreement will be made at the time of such wholesale sale or trade fixing and determining the amount of commission to be paid for such sale; but in the event of no special agreement being made for such wholesale sales or trades, one dollar per acre shall be considered to be the agreed commission for such sales.

"It is specifically agreed between the parties hereto that no commission

shall be earned under the terms of this contract until a sale has been consummated in fact and finally closed by the delivery of the regular conveyance papers and the making of the payments required, and

"It is further agreed that in the event of the failure on the part of the purchaser to carry out any sale contract, only such proportionate part of the commission for such sale shall be due or paid, as the proportion of the amount of actual money paid on the contract bears to the entire consideration agreed to be paid on such sale, meaning that the commission on any sale is to be paid only in proportion and at the time first party collects the money upon such sale, provided, however, that when one-fourth of the purchase price is paid on any sale all the commissions thereon shall become due and payable."

Pursuant to this contract Thompson solicited purchasers and procured a number of sales to be made and received commissions upon them. In September, 1914, he had under negotiation a trade of some 14,000 acres of Davidson's Canadian lands for Louisiana lands and other property owned by one McConnell. The written agreement quoted provided that for such a sale a special agreement for commission should be made, and if none were made one dollar per acre should be the agreed commission. Pending the negotiations Thompson and Davidson had a conversation at Chicago about the commission. This is the account which Thompson gives of it:

"He and I was down to Chicago together, and the deal was—all the details was gone into, was ready to close. He asked me how about commission, how about this commission business. Well, I said, 'There has been nothing said about it.' Well, he says, 'It is high time there was something said about it,' and he asked me what I thought was right and I says, 'What do you think?' Well, he says, 'I will give you $5,000 and I shan't pay that until McConnell pays his first note.' I said, 'Mr. Davidson, that isn't fair.' Well, that is all he would do. * * * Davidson said at that time that he wouldn't pay me any more than $5,000 for the deal, and that wouldn't be paid until McConnell had paid. I saw Davidson again, we came up on the train that same night. We didn't refer any more to the commission."

Davidson's testimony is substantially the same, except that he says Thompson assented to his statement of what the commission should be.

At this time Davidson was under no obligation to complete the negotiation or enter into a contract with McConnell. Thompson had at the time earned no commission. He continued with the negotiations and was the procuring cause of a contract entered into between McConnell and Davidson in November, 1914, which seems to have been delivered in January, 1915. This contract was in the form of a contract of sale by Davidson to McConnell of the Canadian lands and acknowledged the receipt of a certain sum in cash. Notes were given for deferred payments. The cash, the receipt of which was acknowledged, except $1,000, which was paid to Thompson, was represented by Louisiana lands and Galena lead stock to be given in exchange. No portion of the notes has been paid and it appears, inferentially at least, that the transaction has not been carried out by the parties. The theory of the plaintiff is that there was no special agreement fixing the commission, and that he was entitled to one dollar per acre upon the execution of the contract and the jury so found. The theory of the defendant is that as a matter of law there was an agreement for a commission of $5,000 payable when McConnell should pay. This view the trial court took when it granted defendant's motion for judgment notwithstanding the verdict.

The September conversation is not in dispute. Its meaning must be found by determining what, upon a fair and reasonable construction of the words used, in view of the agency contract between the plaintiff and the defendant, the situation of the parties, and what was done by them before and afterwards, the parties intended. Dybvig v. Minneapolis Sanatorium, 128 Minn. 292, 150 N. W. 905. The meaning in a particular case may be so clear that the court will declare it as a matter of law. It was so in Gransbury v. Saterbak, 116 Minn. 339, 133 N. W. 851.

We think the evidence does not leave the meaning of Thompson and Davidson in doubt. They knew that their agency contract contemplated a special agreement fixing the commission. The fixing of it was the purpose of their talk. Davidson stated what he would pay. Thompson understood what he meant but thought he was unfair. He proceeded with the negotiation, understanding what Davidson would pay, and brought the parties together. It is clear to our minds that the parties made a special agreement, as the agency contract stipulated that they should, fixing the commission. The whole situation permits no other

conclusion. This view is supported by a letter from Thompson to Ryckman, a confidential man in Davidson's office, in which it states as explicitly as it can be stated that the arrangement was that he was to have $5,000 for his commission. By entering into an enforceable contract with the purchaser procured by the plaintiff, the defendant did not become liable for a commission within the rule announced in such cases as Francis v. Baker, 45 Minn. 83, 47 N. W. 452; Gransbury v. Saterbak, 116 Minn. 339, 133 N. W. 851, and Meyer v. Keating L. & M. Co. 126 Minn. 409, 148 N. W. 452, for the special agreement provided against such result. The special agreement being as stated the plaintiff was not entitled to a verdict.

Judgment affirmed.