## JACOB A. MILLER, DOING BUSINESS AS J. A. MILLER & COMPANY v. THE CONTINENTAL INSURANCE COMPANY OF NEW YORK.[1]

June 23, 1922.

No. 22,901.

**Insurance policy not canceled by consent of both parties.**
    The evidence does not sustain a verdict finding that a policy of insurance was canceled by mutual consent.

Action in the district court for Ramsey county to recover $1,000 on a fire insurance policy. The answer alleged that before the fire the policy had been canceled and surrendered. The case was tried before Michael, J., who at the close of the testimony denied plaintiff's motion for a directed verdict, and a jury which returned a verdict in favor of defendant. From an order denying his motions for

[1]Reported in 188 N. W. 1000.

judgment notwithstanding the verdict or for a new trial, plaintiff appealed.  Reversed.

*Jesse E. Greenman*, for appellant.

*O'Brien, Stone, Horn & Stringer*, for respondent.

DIBELL, J.

Action to recover upon a policy of fire insurance.  It is conceded that the defendant is liable in the sum of $1,000 unless the policy was canceled by mutual consent.  There was a verdict for the defendant which necessarily includes a finding of cancelation.  The plaintiff appeals from the order denying his alternative motion for judgment or a new trial.

The policy was issued on October 27, 1920.  One Fineberg was the broker.  The agents representing the insurance company wrote Fineberg about November 27, stating that a cancelation was desired.  Fineberg then went to Miller's place of business.  Miller was out of the city but his son Julius was at his establishment.  What he said to Julius is stated in varying phraseology at different times but in substance it is always the same.  Fineberg stated that he told Julius "that I was requested to take up the policy;" told him "that the company wants to have the policy;" that "I was required to take up the policy;" that "the company ordered the policy to be canceled;" that "the policy would have to be taken up," or that "I have told him about it that the company ordered the cancelation of the policy."  Julius told him that his father was out of the city and that he couldn't get into the safe.  On December 17 Fineberg returned.  Miller was not in.  Julius says "we surrendered the policy on the morning, and the fire occurred that night," and he says by "surrendered" he meant handed it over to Mr. Fineberg.  There was no talk about a cancelation at this time.  All the negotiations for the insurance were with the father.  He knew nothing, so far as the record shows, of the return of the policy.  The fire was on the night of the seventeenth.  The policy was delivered to the agents of the insurer the next day.

We think the evidence insufficient to sustain a finding of present cancelation by mutual consent.  There was not a cancelation in ac-

cordance with the statute, G. S. 1913, § 3318, which requires ten days' written notice to the insured. It was by mutual consent if at all. If the plaintiff chose to waive the notice to which he was entitled by the statute as a condition of cancelation, he might do so, and so assent to a present cancelation. The talk about a cancelation is indefinite. Fineberg says he was to get other insurance in place of the policy, or try to get it, and so kept the unearned premiums, and that Julius said this was satisfactory. Fineberg's testimony is uncertain. That of Julius is vague. If he had a real understanding that there was a present cancelation he does not express it, nor does Fineberg. It is so much the practice among insurance companies and agents and brokers, and particularly among brokers, to change policies and shift them from one company to another for one reason or another, the insured being protected on the old until the issuance of the new, that it should not be held upon the evidence before us that there was a present cancelation by mutual consent. The burden of proving such cancelation was upon the defendant. We do not think it bore it.

No case directly in point is cited. In Bradshaw Bros. & Co. v. Fire Ins. Co. of Philadelphia, 89 Minn. 334, 94 N. W. 866, cited by the plaintiff, a definite finding settled the controversy. The following cases, though differing in their facts and in results reached, are helpful in their discussion of the principle involved: Wicks Bros. v. Scottish Union & Nat. Ins. Co. 107 Wis. 606, 83 N. W. 781; Northern Pine Co. v. Liverpool & London & Globe Ins. Co. 143 Wis. 433, 28 N. W. 70; Rosen v. German Alliance, 106 Me. 229, 76 Atl. 688; Artificial Ice Co. v. Reciprocal Exchange, 192 Iowa, 1133, 184 N. W. 756, 757; Bemidji I. W. Co. v. Agricultural Ins. Co. 148 Minn. 193, 181 N. W. 340. The evidence is quite as consistent with an understanding that there was still to be notice, or that the insurance was to continue until new insurance was written, as with an understanding of present cancelation.

In reaching this conclusion we assume that the position of Julius was such that the jury might find that his consent to a cancelation was effective.

The case is not one for judgment notwithstanding but for a new trial.

Order reversed.

HOLT, J. (dissenting).

In my judgment the evidence made it a question for the jury whether or not the policy was canceled by mutual consent. That the son Julius had authority to act in the premises could well be found from the testimony of plaintiff.

BROWN, C. J., concurs in dissent of Justice Holt.