## MERCHANTS AND FARMERS MUTUAL CASUALTY COMPANY v. SAINT PAUL-MERCURY INDEMNITY COMPANY.[1]

April 2, 1943.

No. 33,340.

*Weyl & Weyl,* for appellant.

*Faegre & Benson, Paul J. McGough,* and *Wright W. Brooks,* for respondent.

HENRY M. GALLAGHER, CHIEF JUSTICE.

Action to recover of defendant one-half the amount plaintiff was required to pay as liability insurer of Jennie Schullo. Plaintiff's liability accrued as the result of an action brought against Mrs. Schullo and her son Millard by one John A. Berglund for personal injuries sustained when he was struck by the Schullo automobile. It appears that Mrs. Schullo assigned whatever rights she had against defendant to plaintiff. The trial court directed a verdict for defendant upon the ground that the evidence required

[1]Reported in 8 N. W. (2d) 827.

a finding that Mrs. Schullo's policy with defendant had been cancelled prior to the accident and that therefore plaintiff was not entitled to contribution from defendant. Plaintiff appeals from an order denying its motion for new trial.

On December 26, 1940, defendant, through its agents, Barney & Barney, issued a standard automobile policy to Mrs. Schullo. The following month defendant advised its agents that because Frank Schullo, another son of the insured, had been convicted of a traffic violation it wished to eliminate him from coverage except when accompanied by a member of the family. About January 31, 1941, one of defendant's agents called Mrs. Schullo and informed her that the company would not carry the risk unless the policy be indorsed to so restrict its coverage. Mrs. Schullo did not consent to the proposed endorsement, and she said that she could get full coverage for Frank from some other company. The agent gave her a few days in which to obtain another policy. She told him that when she got it she would call him up and that he could come and get the defendant's policy.

On February 4, 1941, plaintiff issued its standard automobile policy to Mrs. Schullo. Four days later, Saturday, February 8, she called Frank H. Barney, defendant's agent, and told him that she had other insurance and to send over the return premium and she would deliver the policy. There was some discussion as to the amount of the return premium to which Mrs. Schullo was entitled, but Mr. Barney finally agreed to refund the entire premium paid. He directed his junior partner to take the money over to Mrs. Schullo and to pick up the policy. The younger Mr. Barney did not attend to the matter that day.

In the early morning of the following Monday the accident giving rise to the action against Mrs. Schullo and Millard occurred. Mrs. Schullo notified the agents of both companies, and the Barneys then tendered a return of the premium and asked that she surrender the policy. She declined to accept the money or to relinquish the policy. Defendant refused to defend the action against

the Schullos, and plaintiff seeks to recoup one-half its expenses incurred in the defense and settlement thereof.

The sole question before us is whether the telephone conversation of February 8 between defendant's agent and Mrs. Schullo effected a cancellation of the policy as a matter of law. If so, then of course the trial court correctly directed a verdict for defendant.

Rescission of an insurance contract may be accomplished by mutual agreement without an actual surrender of the policy. Whether a rescission has been accomplished depends upon the intent of the parties as evidenced by their acts. Miller v. Continental Ins. Co. 152 Minn. 404, 188 N. W. 1000; *Id.* 157 Minn. 489, 196 N. W. 651. It is ordinarily a question of fact for the jury to determine whether the parties intended a cancellation or rescission (MacDonell v. Keller Mfg. Co. 90 Minn. 321, 96 N. W. 785) ; and on a motion for directed verdict the evidence must be viewed in the light most favorable to the party opposing the motion. Arnold v. Dauchy, 115 Minn. 28, 131 N. W. 625. The party asserting the rescission bears the burden of proving it. Miller v. Continental Ins. Co. 152 Minn. 404, 188 N. W. 1000, *supra.*

When Mr. Barney informed Mrs. Schullo that his company wished to limit the coverage on her son Frank, she told him that she desired full coverage for Frank and that she would get insurance with another company. Concerning this conversation with Mr. Barney, Mrs. Schullo testified:

"I told him that I was going to get another policy and as soon as I got the other policy I said he could come and get theirs. * * * I told him I would keep the policy as long as, until I got another one, I think. And when I got the other one I would call him up and tell him to come and get the other one."

Within a few days Mrs. Schullo obtained insurance from plaintiff, and on February 8 she called the office of Barney & Barney. She testified concerning this conversation: "I told him they could have the policy when they brought me the money." She asked Mr.

Barney for the full amount of the premium she had paid. Mr. Barney claimed that a certain portion of the premium should be retained for the protection she had had from December 26 to February 8.

"Q. And you told him that in all your experience with other insurance companies, when policies were cancelled off that they returned the entire amount?

"A. That is right.

"Q. And then Mr. Barney said all right, we will give you back the full amount and Fred Barney will bring it out to you?

"A. He didn't say the full amount.

"Q. Well, he said he would send the money out to you?

"A. That's right."

From Mrs. Schullo's testimony it seems apparent that she was concerned about two things: (1) To get other insurance and to retain defendant's policy until she did; (2) to get back the full amount of her return premium. Although it is true, as noted by the trial court, that she did not desire to have two policies, still it seems to us that her intent to rescind could have been found by a jury to be dependent upon the accomplishment of the two ends she sought. At any rate, we believe that the evidence does not so conclusively show a cancellation that it should have been so decided as a matter of law. We believe the question should have been submitted to the jury.

Reversed.

LORING, JUSTICE (dissenting).

Concerning the cancellation of the policy, there was no dispute about the tenor of the conversation between Mrs. Schullo and Frank Barney. Mrs. Schullo testified that she had no intention of carrying two policies. It strikes me that reasonable minds could not differ as to her purpose in calling up Barney and that it was to conclude the negotiations for a cancellation of the policy. Also, that because defendant refused to carry the risk any longer on account of her son's violation of law Barney's purpose was to

cancel the policy. In fact, Barney had previously carried the policy for a few days only to give her a chance to get other coverage, when she was to advise him that she had other insurance and the cancellation was to be effected. Everything in the record tends to prove the intent of both parties to the conversation. The discussion was as to whether Mrs. Schullo was to get back all the premium or be charged for the period she had the coverage. She prevailed on that by Barney's promising to pay back the whole premium. As I view the conversation, it was clearly a cancellation of the Mercury policy. Nothing was left to be done but deliver the money and policy. "Neither a formal surrender of the policy nor immediate repayment of the unearned premium is essential to a valid cancellation by mutual agreement." 32 C. J. p. 1244, § 428; Hillock v. Traders Ins. Co. 54 Mich. 531, 20 N. W. 571. When the language is undisputed and its meaning clear, it is as much the duty of the court to declare the contract as a matter of law as it is to submit to a jury a disputed question of fact. Thompson v. Davidson, 136 Minn. 368, 162 N. W. 458; Gransbury v. Saterbak, 116 Minn. 339, 133 N. W. 851.

I think the order of the trial court should be affirmed.