Michael R. McQUARRIE and Sandra McQuarrie, Respondents,

v.

WASECA MUTUAL INSURANCE CO., Appellant.

No. C9-82-1510.

Supreme Court of Minnesota.

Aug. 26, 1983.

Rehearing Denied Sept. 19, 1983.

Blethen, Gage, Krause, Blethen, Corcoran, Berkland & Peterson, Mankato, for appellant.

Holst, Vogel, Erdmann & Vogel, George F. Vogel, Red Wing, for respondents.

PETERSON, Justice.

Respondents brought this declaratory judgment action against Waseca Mutual Insurance Company (Waseca) to determine whether Waseca provided concurrent coverage under a fire insurance policy on respondents' home. Waseca appeals from the trial court's conclusion that the Waseca policy was in effect on March 13, 1981, when respondents' home was destroyed by fire.

In October 1980, respondent Michael McQuarrie called Lynn Boyton's House of Insurance to obtain fire insurance on his newly constructed home located in rural Big Fork. Boyton asked McQuarrie several questions over the phone, and, on November 6, filled out an application for a fire insurance policy with Waseca, dating coverage as effective November 1, 1980.

One of the questions in the application regarded fire protection and involved a choice between three categories: (1) Protected: within 1,000 feet of a fire hydrant and within 5 miles of a fire department; (2) Partially Protected: over 1,000 feet from a fire hydrant but within 5 miles of a fire department; and (3) Unprotected. Because McQuarrie had told Boyton that the nearest fire department was 20 miles away, Boyton checked the box for "Unprotected."

On November 12, an underwriting service for Waseca inspected the McQuarrie property and reported that the home, located in a rural area about 100 feet from a lake, was inaccessible by road. A road, under construction at the time, stopped short of the house by about ½ mile. On December 18, Waseca mailed a letter to Boyton informing him that it would cancel the policy because the risk was too isolated and that it would send direct notice of the cancellation to the McQuarries on January 6, 1981. The next day, Boyton forwarded a copy of that letter to the McQuarries with his own memo, asking for further directions on obtaining substitute coverage. McQuarrie does not remember receiving this letter.

On January 6, 1981, Waseca sent notice of cancellation to McQuarrie by certified mail, along with a cancellation ticket indicating the unearned premium to be credited and indicating that the policy had been in effect for 66 days. The notice stated that coverage would end on February 5. Boyton sent another memo reminding the McQuarries of the February cancellation after he received copies of the cancellation notice. On February 16, Sandra McQuarrie called Boyton and arranged for coverage with another insurer, Citizens Security Mutual Insurance Company (Citizens).

On March 13, 1981, the McQuarrie home was destroyed by fire, and the McQuarries' loss has been set at $61,300. Waseca denied coverage, claiming that it had properly canceled the policy under the policy provisions. Citizens paid the entire loss, with half that amount provided in the form of a loan given in exchange for the McQuarries' agreement to pursue this lawsuit. Thus, the insured has nothing at stake in the resolution of this issue; plainly, it is a question of whether one or both insurers will pay the loss.

1. Waseca's first argument is based on the policy provision that permits cancellation for any reason if done within the first 60 days that the policy is in effect. It claims that the December 18 letter, forwarded to the McQuarries by Boyton, constituted notice of cancellation within 60 days.

■ In order to constitute notice of cancellation, the notice must be explicit, unconditional, and use unequivocal language. It must state that the policy is, or without further notice will stand, canceled as of a certain day. Anything that falls short of this standard will be considered invalid. *Cormican v. Anchor Casualty Co.,* 249 Minn. 196, 203–04, 81 N.W.2d 782, 788 (1957). The letter sent to the insured in *Cormican* did not announce explicitly that coverage would expire, without further notice, on a certain date, and was held invalid. In contrast, the letter sent to the insured and held to constitute cancellation notice in *Lievers v. National Insurance Underwriters,* 257 Minn.

268, 101 N.W.2d 817 (1960), stated that if the premium was not paid, coverage would expire without further notice at 12:01 a.m. on a certain date.

■ In this case, because the December 18 letter stated that direct notice would be sent to the insured on January 6, and failed to identify the time and date on which coverage would expire, it was not a valid cancellation notice. Proper notice was not sent until January 6, at which time the policy had been in effect for 66 days.

■ 2. Waseca next argues that it properly canceled the policy, because the McQuarries' failure to inform Boyton of the property's inaccessibility by road was a material omission of fact, which under the policy constitutes grounds for cancellation of a policy in effect for over 60 days. We disagree. Minnesota Statutes § 60A.08, subd. 9 (1982), provides that no oral or written representation made by the insured shall be deemed material unless made with an intent to deceive or unless it increases the risk of loss. There is no evidence that McQuarrie intended to deceive Boyton regarding the homesite's location, and it is doubtful that the lack of road access increased the risk of loss. If property more than 5 miles from a fire department is classified as "Unprotected," Waseca had to contemplate total loss where the property was known to be 20 miles from a fire department.

3. The third issue is whether the policy was rescinded by mutual consent. This issue differs from the disfavored doctrine of cancellation by substitution, which involves the unilateral action of the insured in obtaining substitute coverage. *See Franklin v. Carpenter,* 309 Minn. 419, 244 N.W.2d 492 (1976).

■ Rescission of an insurance contract may be accomplished by mutual agreement. *Merchants & Farmers Mutual Casualty Co. v. St. Paul-Mercury Indemnity Co.,* 214 Minn. 544, 546, 8 N.W.2d 827, 828 (1943). Whether such a rescission has been accomplished depends on the intent of the parties as evidenced by their acts. *Mutual of Oma-*

*ha Insurance Co. v. Korengold*, 308 Minn. 457, 241 N.W.2d 651 (1976); *Merchants & Farmers Mutual Casualty Co.*, 214 Minn. at 546, 8 N.W.2d at 828.

In *Korengold*, the insurer claimed a right to rescind the policy based on alleged misrepresentations by the insured. It made clear this desire to rescind by sending the insured a premium refund check, which the insured cashed. While we emphasized that the fact that an insured cashes or retains a refund check does not in itself constitute rescission, we held that the insured, a lawyer aware of the insurer's claims, had indicated his intent to cancel by cashing the check. 308 Minn. at 458, 241 N.W.2d at 652.

 In this case, Waseca's cancellation notice and premium credit, although otherwise ineffective under the policy provisions, constituted an offer to cancel the policy. Respondents accepted that offer upon obtaining substitute coverage. Had the loss occurred before respondents obtained coverage through Citizens, Waseca would have been liable for the loss, because it had failed to effect a proper cancellation. Here, however, the circumstances indicate that both parties considered the policy canceled. On these facts, then, Citizens, not Waseca, bore the risk for the full amount of the loss.

Reversed.