Floyd BYMAN d.b.a. Byman's and
State Bank of Wheaton,
Appellants,

v.

AUTO–OWNERS INSURANCE
COMPANY, Respondent.

No. C7–84–1865.

Court of Appeals of Minnesota.

March 19, 1985.

John E. Mack, New London, for appellants.

Robert C. Swenson, Swenson, Grover, Lervick, Syverson & Battey, Ltd., Alexandria, for respondent.

Heard, considered and decided by FORSBERG, P.J., and PARKER and LANSING, JJ.

## OPINION

LANSING, Judge.

Appellant Floyd Byman brought this action against respondent Auto-Owners Insurance Company, claiming wrongful denial of coverage under an insurance policy allegedly in force on March 3, 1982, when fire destroyed Byman's inventory. The trial court found that Byman was not insured by Auto-Owners at the time of the fire because he had not renewed his policy when it became due in January 1982. He appeals from the judgment and an order denying his motion for a new trial. We affirm.

## FACTS

Before March 1982 Floyd Byman operated a retail business in Wheaton, Minnesota, selling and servicing motorcycles, snowmobiles, and chainsaws. In 1981 he carried two fire insurance policies on his inventory—one with Auto-Owners and one with the Milbank Insurance Company (not a party to this action). Each policy was for $25,000 and covered 50 percent of loss from fire. Appellant State Bank of Wheaton was a lienholder on the Auto-Owners policy because it owned a security interest in Byman's inventory.

Byman purchased both fire insurance policies, in addition to another unrelated policy, through an independent agency, the

Ringdahl and Terhaar Insurance Agency of Wheaton, Minnesota. Rather than billing Byman in full each time one of his premiums came due, the Ringdahl Agency kept a running account with Byman, billing him periodically and at times visiting his place of business to collect premiums.

In late December 1981 Auto-Owners mailed to the Ringdahl Agency a copy of the 1982 renewal policy for Byman's fire insurance and billed the Ringdahl Agency account $315 for the renewal premium. The renewal policy was for coverage beginning January 4, 1982. On or about December 31, 1981, Terhaar, on behalf of the Ringdahl Agency, went to Byman's place of business to discuss the renewal policy.

Although the parties disagree about the results of this discussion, both Byman and Terhaar agree that they discussed an independent firm's prior inspection of Byman's premises and the potential consequences. Terhaar testified at trial that when he told Byman his Auto-Owners policy might be cancelled as a result of the inspection, Byman stated, "Let's beat them to the punch and not take this policy, send it back." When Terhaar indicated that there might be a problem with full coverage from Milbank, he testified that Byman replied, "Let's cancel that one too." Byman, however, testified that Terhaar had suggested cancelling the insurance, and that Byman replied, "if that's going to be better for me to obtain insurance with another company I suppose that's what we better do then."

A few days later Terhaar returned to Byman's place of business and obtained Byman's signature on a policy release for the Milbank insurance contract, which was not up for renewal. On January 4, 1982, Terhaar mailed to Auto-Owners a letter stating:

We are returning the above commercial fire policy for flat cancellation effective on the renewal date of January 4, 1982. The insured has no need for this policy and we trust flat cancellation will be made.

By an invoice dated January 11, 1982, Auto-Owners credited the Ringdahl Agency account for $315. Auto-Owners sent no notice of non-renewal or cancellation to Byman or to the State Bank of Wheaton.

On March 3, 1982, Byman's place of business burned, and his inventory was destroyed. He filed a proof of loss with Auto Owners, which denied his claim, and then commenced this lawsuit. The trial court held that Auto-Owners was justified in denying Byman's claim because he had not renewed his insurance policy. Byman appealed, claiming that Auto Owners cancelled his policy and he should have received notice of the cancellation.

## ISSUE

Did Byman renew his insurance policy with Auto-Owners, obligating Auto-Owners to notify him of subsequent cancellation?

## ANALYSIS

Under the Minnesota Standard Fire Insurance Policy, Minn.Stat. § 65A.01 (1982 & Supp.1983), every fire insurance policy must state:

This policy may be cancelled at any time by this company by giving to the insured a ten days' written notice of cancellation * * *.

*Id.* § 65A.01, subd. 3 (Supp.1983). The Minnesota Supreme Court in *McQuarrie v. Waseca Mutual Insurance Co.*, 337 N.W.2d 685 (Minn.1983), has explained:

In order to constitute notice of cancellation, the notice must be explicit, unconditional, and use unequivocal language. It must state that the policy is, or without further notice will stand, canceled as of a certain day. Anything that falls short of this standard will be considered invalid.

*Id.* at 687 (citing *Cormican v. Anchor Casualty Co.*, 249 Minn. 196, 203–04, 81 N.W.2d 782, 788 (1957)).

Byman argues that because Auto-Owners failed to comply with these notice requirements, its "cancellation" of his insurance policy was ineffective. He claims that the trial court's conclusion, that the cancellation requirements are inapplicable because

this case involves non-renewal rather than cancellation, is not supported by law or by the record.

Byman argues that the policy was renewed effective January 4, 1982, when Auto-Owners mailed his renewal policy to the Ringdahl Agency and billed the Agency account for the annual renewal premium. However, as the Minnesota Supreme Court has stated in *St. Paul Fire & Marine Insurance Co. v. Bierwerth*, 285 Minn. 310, 175 N.W.2d 136 (1969), before an insurance contract can be renewed, the insured must consent to renewal:

> [T]he unsolicited issuance of a renewal policy * * * is not an acceptance, but an offer, and a completed contract is not formed until acceptance is expressed by the insured or necessarily inferred from his conduct.

*Id.* at 318, 175 N.W.2d at 141.

The trial court found that Byman did not accept Auto-Owners' tender of the renewal policy; therefore, the renewal policy was never in effect. This finding is supported by Terhaar's testimony that he believed Byman did not wish to renew his policy and by Terhaar's letter to Auto-Owners requesting "flat cancellation" of the policy. According to the trial court, "flat cancellation" is insurance industry trade jargon for non-renewal.

Byman also argues that his Auto-Owners fire insurance policy was renewed because the premium was paid by Terhaar and accepted by Auto-Owners. The record does not support this contention. The only evidence on this point indicates that Auto-Owners automatically billed the Terhaar Agency when it sent out the renewal policy and credited the Agency's account by means of an invoice—not a check—when the policy was not renewed. The Ringdahl Agency's record of charges and credits to Byman's account does not contain any entry billing Byman for the renewal premium.

On appeal Byman also contests the admission into evidence of a newspaper article and certain of his financial records.

These issues were not raised in his motion for a new trial and therefore may not be addressed by this court. *See Antonson v. Ekvall*, 289 Minn. 536, 539, 186 N.W.2d 187, 189–90 (1971).

### DECISION
The record supports the trial court's determination that Byman did not renew his insurance policy with Auto-Owners. Auto-Owners therefore was not required to give Byman notice of cancellation of his insurance policy.

Affirmed.