# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

YANG v EVEREST NATIONAL INSURANCE COMPANY

Docket No. 160578. Argued on application for leave to appeal March 3, 2021. Decided June 10, 2021.

Wesley Zoo Yang and his wife, Viengkham Moualor, brought an action in the Wayne Circuit Court against Everest National Insurance Company (Everest) and Motorist Mutual Insurance Company (Motorist), seeking to recover personal protection insurance (PIP) benefits under a no-fault insurance policy issued by Everest to plaintiffs. Everest issued Yang a six-month no-fault insurance policy, the term of which ran from September 26, 2017, through March 26, 2018. The policy required Yang to pay a monthly premium and provided that the policy could be canceled during the policy period by Everest sending at least 10 days' notice by first-class mail if the cancellation was for nonpayment of the premium. On October 9, 2017, Everest mailed Yang a bill for the second monthly payment, stating that if Yang failed to pay the amount due by October 26, 2017, the policy would be canceled, effective October 27, 2017; the policy provided that the cancellation notice did not apply if Yang paid the premium on time. Subsequently, Yang did not pay the premium on time, and Everest sent Yang an offer to reinstate, explaining that the policy was canceled as of October 27, 2017, for nonpayment and that Yang could reinstate the policy with a lapse in coverage. On November 15, 2017, plaintiffs were struck by a car when they were walking across a street; Motorist insured the driver of the vehicle that struck plaintiffs. Two days later, on November 17, 2017, Yang sent the monthly premium payment to Everest; the policy was reinstated effective that day, and the notice informed Yang that there had been a lapse in coverage from October 27, 2017, through November 17, 2017. Plaintiffs filed this action after Everest refused plaintiffs' request for PIP benefits under the policy. Everest moved for summary disposition, arguing that plaintiffs were not entitled to benefits under the policy because it had been canceled and was not in effect at the time of the accident and that the policy's cancellation provision was not inconsistent with MCL 500.3020(1)(b); Motorist disagreed with Everest's motion and argued that it was entitled to summary disposition under MCR 2.116(I)(2) because it was not the insurer responsible for the payment of PIP benefits. The court, Susan L. Hubbard, J., denied Everest's motion and granted summary disposition in favor of Motorist, reasoning that Everest's notice of cancellation was not valid because it was sent before the nonpayment occurred and that Everest was therefore responsible for the payment of PIP benefits; the court dismissed Motorist from the action. Everest appealed. In a published opinion, the Court of Appeals, SHAPIRO, P.J., and GLEICHER, J. (SWARTZLE, J., concurring), affirmed the trial court's order, concluding that the cancellation notice was not valid under MCL 500.3020(1)(b) because Everest

sent the notice before the premium was due and that the notice did not satisfy the terms of plaintiffs' no-fault policy itself. 329 Mich App 461 (2019). The Supreme Court ordered and heard oral argument on whether to grant Everest's application for leave to appeal or take other action. 505 Mich 1068 (2020).

In a unanimous opinion by Justice BERNSTEIN, the Supreme Court, in lieu of granting leave to appeal, *held*:

Under MCL 500.3020(1)(b), a policy of casualty insurance, including all classes of motor vehicle coverage, may not be delivered in Michigan by an insurer for which a premium or advance assessment is charged unless the policy provides, in part, that the policy may be canceled at any time by the insurer mailing to the insured at the insured's address last known to the insurer or an authorized agent of the insurer, with postage fully prepaid, a not less than 10 days' written notice of cancellation with or without tender of the excess or paid premium or assessment above the pro rata premium for the expired time. The phrase "notice of cancellation" has a peculiar and appropriate meaning in the law as reflected in the Supreme Court's decisions in *American Fidelity Co v R L Ginsburg Sons' Co*, 187 Mich 264 (1915), and *Beaumont v Commercial Cas Ins Co*, 245 Mich 104 (1928). Those decisions held that a notice of cancellation must be peremptory, explicit, and unconditional to be effective. Because there is no evidence that the Legislature intended to abrogate the common-law meaning of this phrase when it enacted MCL 500.3020(1)(b), the common-law definition of the phrase applies, and a notice of cancellation must be peremptory, explicit, and unconditional to be effective. An insurance company's notice of cancellation for nonpayment of insurance premiums before any nonpayment actually occurs is not peremptory, explicit, and unconditional, and therefore it is not an effective cancellation for purposes of the statutory provision. In this case, Everest's October 9, 2017 letter to plaintiffs was ineffective for purposes of MCL 500.3020(1)(b) because it provided that cancellation was conditioned on Yang's failure to pay his insurance premiums. In other words, because the notice was not peremptory, explicit, and unconditional, it was not a valid cancellation notice. Accordingly, Yang's insurance policy with Everest was still in effect at the time of the accident.

Affirmed.

# OPINION

Chief Justice:
    Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED June 10, 2021

S T A T E   O F   M I C H I G A N

SUPREME COURT

WESLEY ZOO YANG and VIENGKHAM
MOUALOR,

        Plaintiffs-Appellees,

v                                   No. 160578

EVEREST NATIONAL INSURANCE
COMPANY,

        Defendant-Appellant,

and

MOTORIST MUTUAL INSURANCE
COMPANY,

        Defendant-Appellee.

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

This case concerns whether MCL 500.3020(1)(b) of the Insurance Code, MCL
500.100 *et seq*., allows an insurance company to cancel an insurance policy when the

company mails its customer a letter purporting to be a notice of cancellation for nonpayment of insurance premiums before any nonpayment actually occurred. We hold that MCL 500.3020(1)(b) does not allow cancellation on these grounds. Accordingly, we affirm the judgment of the Court of Appeals.

## I. FACTUAL BACKGROUND

Plaintiffs, Wesley Zoo Yang and Viengkham Moualor, are a married couple who purchased a six-month no-fault insurance policy from defendant Everest National Insurance Company (Everest). Yang was the primary insured party on the policy and was responsible for making the monthly premium payments. The policy went into effect on September 26, 2017, when he made the first premium payment. On October 9, 2017, approximately two weeks after Yang made the first payment, Everest mailed him a letter titled, "PREMIUM BILLING AND CANCELLATION NOTICE FOR NON-PAYMENT." The letter informed Yang that his next insurance premium payment was due October 26, 2017, and that Everest would cancel the policy if he failed to pay by the due date. Everest maintains that this letter was sent in accordance with the termination provisions in the no-fault insurance policy, which stated:

> Cancellation - This Policy may be canceled during the policy period as follows:
>
> * * *
>
> 2. We may cancel by mailing you at the address last known by us or our agent:
>
> a. at least 10 days notice by first class mail, if cancellation is for non-payment of premium[.] [Emphasis omitted.]

2

At the time the cancellation notice was mailed, Yang had made all required payments. However, Yang failed to make the subsequent payment due on October 26, 2017, and Everest terminated the policy for nonpayment of the premium on October 27, 2017.

On October 30, 2017, Everest sent Yang a letter informing him that Everest would reinstate the policy with a lapse in coverage if he made a premium payment by November 27, 2017. At that time, Yang did not take any steps to reinstate the policy. On November 15, 2017, plaintiffs were struck by a car while walking down the street. Two days later, Yang made a payment to Everest to reinstate the policy. Plaintiffs then filed a claim for personal protection insurance (PIP) benefits through Everest. Everest denied the claim, explaining that it was not responsible for PIP benefits because Yang did not have a valid no-fault insurance policy when the accident occurred.

Following the denial of the claim for PIP benefits, plaintiffs sued Everest.[1] During litigation, Everest moved for summary disposition under MCR 2.116(C)(10), arguing that the policy was lawfully canceled before plaintiffs were injured and that no genuine issue of material fact existed to show that Everest was responsible for servicing the claim for PIP benefits. In response, plaintiffs argued that a genuine issue of material fact did exist as to whether Yang's payment to Everest on November 17, 2017, reinstated the policy. After hearing oral argument, the trial court denied Everest's motion, concluding that the

---

[1] Defendant Motorist Mutual Insurance Company (Motorist) was also named as a defendant in the trial court because the unnamed driver of the car that struck plaintiffs had a no-fault insurance policy through Motorist. All claims against Motorist were disposed of via summary disposition in the trial court. Although Motorist continues to participate in this appeal, the central issue in this case solely pertains to the cancellation notice Everest sent to Yang.

3

cancellation notice had not complied with the terms of the no-fault insurance policy and therefore the policy had never actually been canceled, rendering Everest first in priority for payment of PIP benefits to plaintiffs.

Everest appealed in the Court of Appeals, which affirmed in a split published opinion. *Yang v Everest Nat'l Ins Co*, 329 Mich App 461; 942 NW2d 653 (2019). The Court of Appeals majority ruled in plaintiffs' favor, holding that the cancellation notice Everest mailed to Yang did not satisfy MCL 500.3020(1)(b) and, moreover, that it did not satisfy the terms of plaintiffs' no-fault policy. *Id*. at 470-472. The majority explained that for a cancellation to be valid under MCL 500.3020(1)(b), "the event triggering the right to cancel must have taken place first." *Id*. at 470. Because Yang had not yet failed to pay his insurance premium when Everest mailed the cancellation notice for nonpayment of the premium, the majority ruled that the notice was invalid and did not satisfy MCL 500.3020(1)(b). *Id*. The concurrence provided a different rationale, concluding that the Court of Appeals could rule in plaintiffs' favor without reaching the broader question of whether the cancellation notice failed to satisfy MCL 500.3020(1)(b). *Id*. at 472-473 (SWARTZLE, J., concurring). The concurrence explained that a cancellation notice must be unconditional to be effective. *Id*., citing *American Fidelity Co v R L Ginsburg Sons' Co*, 187 Mich 264, 276; 153 NW 709 (1915). Thus, the concurrence reasoned, the cancellation notice Everest sent Yang was not an effective cancellation of the policy because it was conditioned on Yang's failure to pay his insurance premiums. *Yang*, 329 Mich App at 472 (SWARTZLE, J., concurring).

4

Everest timely sought leave to appeal in this Court. On May 20, 2020, we directed the Clerk to schedule oral argument on the application. *Yang v Everest Nat'l Ins Co*, 505 Mich 1068 (2020).

## II. STANDARD OF REVIEW

The trial court denied Everest's motion for summary disposition, which was brought under MCR 2.116(C)(10). We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Honigman Miller Schwartz & Cohn LLP v Detroit*, 505 Mich 284, 294; 952 NW2d 358 (2020). When reviewing a motion brought under MCR 2.116(C)(10), "a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties . . . in the light most favorable to the party opposing the motion." *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 211-212; 934 NW2d 713 (2019) (quotation marks and citations omitted). Summary disposition is appropriate when no genuine issue of material fact exists. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Everest argues that MCL 500.3020(1)(b) did not preclude it from canceling Yang's policy after mailing a letter—which it characterizes as a notice of cancellation for nonpayment of premium—before he failed to pay his insurance premiums. We disagree and hold that Everest's letter was not a valid cancellation notice because it did not satisfy MCL 500.3020(1)(b).

When interpreting an insurance policy, " '[t]he policy and the statutes relating thereto must be read and construed together as though the statutes were a part of the contract,' " because the parties are presumed to have contracted with the intention of executing a policy that complies with the related statutes. *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525 n 3; 502 NW2d 310 (1993), quoting 12A Couch, Insurance, 2d (rev ed), § 45:694, pp 331-332. See also *Bazzi v Sentinel Ins Co*, 502 Mich 390, 399; 919 NW2d 20 (2018) ("When a provision in an insurance policy is mandated by a statute, the policy and the statute must be construed together as though the statute were part of the policy, and the rights and limitations of the coverage are governed by that statute.") (quotation marks and citation omitted). Therefore, the pertinent question here is what constitutes a valid cancellation notice under MCL 500.3020(1), which states:

> A policy of casualty insurance . . . , including all classes of motor vehicle coverage, shall not be issued or delivered in this state by an insurer . . . for which a premium or advance assessment is charged, unless the policy contains the following provisions:
>
> * * *
>
> (b) . . . [T]hat the policy may be canceled at any time by the insurer by mailing to the insured at the insured's address last known to the insurer or an authorized agent of the insurer, with postage fully prepaid, a not less than 10 days' *written notice of cancellation* with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time. [Emphasis added.]

Our analysis of this issue is governed by the general principles of statutory interpretation. When interpreting a statute, courts must "ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Andrie Inc v Dep't of Treasury*, 496 Mich 161, 167; 853 NW2d 310 (2014) (quotation marks and citation

6

omitted).  Undefined words are generally "presumed to have their ordinary meaning," but some words and phrases have a "peculiar and appropriate" meaning within the common law.  *Clam Lake Twp v Dep't of Licensing & Regulatory Affairs*, 500 Mich 362, 373; 902 NW2d 293 (2017).  If a word or phrase has acquired a peculiar or appropriate meaning in the law, it must be "construed and understood according to such peculiar and appropriate meaning."  MCL 8.3a.

When a word " 'has been subject to judicial interpretation, the legislature is presumed to have used particular words in the sense in which they have been interpreted.' " *McCormick v Carrier*, 487 Mich 180, 192; 795 NW2d 517 (2010) (citation omitted).  As we have previously explained:

> When the Legislature, without indicating an intent to abrogate the common law, borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.  [*Ray v Swager*, 501 Mich 52, 69 n 34; 903 NW2d 366 (2017) (quotation marks and citations omitted).]

The outcome of this case depends on the meaning of the phrase "notice of cancellation," which is not defined by the relevant statute.[2]  The phrase "notice of cancellation" has acquired a peculiar and appropriate meaning in the law, as reflected in two early rulings of this Court: *American Fidelity Co*, 187 Mich at 264, and *Beaumont v Commercial Cas Ins Co*, 245 Mich 104, 107; 222 NW 100 (1928).

---

[2] We have recognized that the term "cancellation" has itself acquired a peculiar and appropriate meaning in this context.  See *Titan Ins Co v Hyten*, 491 Mich 547, 567; 817 NW2d 562 (2012) ("In contract law, 'cancellation' has acquired a peculiar and appropriate meaning in the law.").  This case deals with a closely related issue, i.e., the legal sufficiency of a notice of cancellation.

7

In *American Fidelity Co*, 187 Mich at 266-267, the plaintiff insurance company sent a cancellation notice to the defendant insured stating that the plaintiff would cancel the defendant's liability insurance policy if the defendant did not agree to an increased premium. When the defendant refused to agree to the rate increase, the plaintiff canceled the policy. *Id*. at 267. The trial court ruled that the cancellation notice was valid. *Id*. at 269. This Court disagreed, holding that a cancellation notice must "be according to the terms of the policy, and must also have been peremptory, explicit, and unconditional" in order to be valid. *Id*. at 276. Because cancellation of the liability policy was conditioned on the defendant's refusal to accept the increased premium, this Court concluded that the cancellation notice was invalid. *Id*. at 276-277.

In *Beaumont*, 245 Mich at 105, the plaintiff held a property insurance policy with the defendant insurance company. The plaintiff filed a large number of insurance claims with the defendant, and in an effort to avoid servicing the claims, the defendant sent the plaintiff a letter asking the plaintiff to " 'kindly endeavor to procure this insurance with some other company by November 1st, at which time we would like to be relieved.' " *Id*. at 105-106. The defendant argued that the letter constituted a valid cancellation notice. *Id*. at 106. On appeal, this Court reiterated the principle that "[n]otice of cancellation of an insurance policy must be according to the provisions of the policy and be peremptory, explicit, and unconditional." *Id*. at 106-107, citing *American Fidelity Co*, 187 Mich 264. This Court also stated that a cancellation notice "is not sufficient if it is equivocal or merely states a desire or intention to cancel." *Beaumont*, 245 Mich at 107. Taking those principles into account, this Court concluded that the letter did not constitute a valid cancellation of the plaintiff's property insurance policy because the letter never unequivocally stated that

8

the policy was canceled and instead merely informed the plaintiff that the defendant desired the plaintiff to find a different insurance company. *Id.*

MCL 500.3020(1)(b) was enacted well after our decisions in *American Fidelity Co* and *Beaumont*, and the peculiar and appropriate meaning of the phrase "notice of cancellation" has not been interpreted differently in the insurance context since *American Fidelity Co* was decided in 1915. See, e.g., *Blekkenk v Allstate Ins Co*, 152 Mich App 65, 72; 393 NW2d 883 (1986) (reiterating this Court's holding in *Beaumont*, 245 Mich at 106-107, that a notice of cancellation must be " 'peremptory, explicit, and unconditional' ").[3] Moreover, there is no evidence that the Legislature intended to abrogate the common-law meaning of the phrase when it enacted MCL 500.3020(1)(b). "The common law remains in force unless it is modified." *People v Moreno*, 491 Mich 38, 46; 814 NW2d 624 (2012). The Legislature's abrogation of the common law "is not lightly presumed," and we have required the Legislature to speak in "no uncertain terms" when it exercises its authority to modify the common law. *Id.* (quotation marks and citations omitted). Indeed, "[w]e must presume that the Legislature knows of the existence of the common law when it acts." *Id.* (quotation marks, citation, and brackets omitted). We therefore presume that when the

---

[3] We note that the phrase "notice of cancellation" has been similarly interpreted outside of Michigan. See *Keys Engineering Co v Boston Ins Co*, 192 F Supp 574, 577 (SD Fla, 1961) ("In order to be effective, a notice of cancellation of a policy of insurance must be unequivocal and absolute."); *Transamerica Ins Co v Bank of Mantee*, 241 So 2d 822, 825 (Miss, 1970) ("Cancellation of an insurance policy must be definite, clear and unequivocal."); *Stilen v Cavalier Ins Corp*, 194 Neb 824, 828; 236 NW2d 178 (1975) ("[A] notice of cancellation of insurance for nonpayment of premium or a premium installment must be peremptorily explicit . . . ."); *McQuarrie v Waseca Mut Ins Co*, 337 NW2d 685, 687 (Minn, 1983) ("In order to constitute notice of cancellation, the notice must be explicit, unconditional, and use unequivocal language.").

9

Legislature enacted MCL 500.3020(1)(b), it did so knowing that the phrase "notice of cancellation" has a peculiar and appropriate meaning in the common law and that it intended for that meaning to be applied to the statute. See *Ray*, 501 Mich at 69 n 34; *McCormick*, 487 Mich at 192.[4] Accordingly, we interpret the phrase "notice of cancellation," as used in MCL 500.3020(1)(b), to require cancellation notices to be peremptory, explicit, and unconditional. See *Beaumont*, 245 Mich at 106-107; *American Fidelity Co*, 187 Mich at 276.[5]

With this understanding in mind, we hold that the cancellation notice Everest sent to Yang violated MCL 500.3020(1)(b). The cancellation notice specifically included the condition that Yang's no-fault insurance policy would be canceled *if* he failed to pay his insurance premiums on time. Given that a cancellation notice must be unconditional to be effective, the letter that Everest sent Yang did not constitute a valid cancellation notice under MCL 500.3020(1)(b). Therefore, because Everest did not comply with MCL

---

[4] We do not believe that the interpretation set forth in *American Fidelity* and *Beaumont* conflicts with the plain language of MCL 500.3020(1)(b). Although the statute provides that the policy may be canceled "at any time," MCL 500.3020(1)(b), this does not conflict with the common-law rule that notice of such cancellation must be "peremptory, explicit, and unconditional." See *Beaumont*, 245 Mich at 106-107; *American Fidelity Co*, 187 Mich at 276. In other words, the policy may be canceled "at any time," as long as the notice of cancellation is unconditional.

[5] This interpretation is also consistent with the objective of MCL 500.3020(1)(b):

> The obvious objective of [MCL 500.3020] is to make certain that all of those who are insured under a policy are afforded a period of time, ten days, either to satisfy whatever concerns have prompted cancellation and thus revive the policy or to obtain other insurance, or simply to order their affairs so that the risks of operating without insurance will not have to be run. [*Lease Car of America, Inc v Rahn*, 419 Mich 48, 54; 347 NW2d 444 (1984).]

500.3020(1)(b), Yang's insurance policy was still in effect at the time of the accident. See

*Nowell v Titan Ins Co*, 466 Mich 478, 482-483; 648 NW2d 157 (2002) (describing that

notice must be given in accordance with MCL 500.3020(1)(b) for a cancellation of an

insurance policy to be effective).[6]

## IV.  CONCLUSION

We hold that under MCL 500.3020(1)(b), a cancellation notice is effective only if

it is peremptory, explicit, and unconditional.  In this case, because Everest's letter provided

that cancellation was conditioned on Yang's failure to pay his insurance premiums, the

letter was ineffective as a notice of cancellation.  We affirm the judgment of the Court of

Appeals and remand to the trial court for further proceedings consistent with this opinion.

Richard H. Bernstein
Bridget M. McCormack
Brian K. Zahra
David F. Viviano
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

---

[6] On appeal, Everest presents the alternate argument that the October 30, 2017 letter offering to reinstate the insurance policy was an effective notice of cancellation.  We disagree.  While that letter described an unconditional cancellation, stating that the "insurance has been cancelled," that notice did not comply with MCL 500.3020(1)(b) or our holding in *Nowell*.  MCL 500.3020(1)(b) requires that the insurer send a "not less than 10 days' written notice of cancellation . . . ."  We concluded in *Nowell* that "the mailing must be reasonably calculated to be delivered so as to arrive at the insured's address at least ten days before the date specified for cancellation for the notice to be effective." *Nowell*, 466 Mich at 484.  In this case, the October 30 letter did not give that 10-day period; instead, it declared that the policy had already been cancelled and that the cancellation was already effective.  It was insufficient to serve as a notice of cancellation under MCL 500.3020(1)(b).

11